Delaware, Lackawanna & Western Railroad Company v. The Tobyhanna Company, Limited, Appellants.

*Adverse possession—Statute of limitation—Lands owned by railroad not part of right of way.*

1. Land purchased by a railroad company outside of its rights of way, for railroad purposes generally, not present but prospective, is subject to the statute of limitations, and title to it may be acquired as against the company by adverse possession.

2. In an action of ejectment by a railroad company to recover possession of a strip of land lying along its right of way acquired by purchase and never appropriated for railroad purposes, evidence by defendant of twenty-four years' adverse possession is competent and material.

*Evidence—Title to unseated lands—Tax deeds—Claimant by adverse possession.*

3. Where in an action of ejectment a link in plaintiff's title is a treasurer's deed which recites the sale for taxes of a large tract of unseated land embracing the lot in dispute, and there is no evidence offered of a valid assessment of the lands, the defendant claiming title only through adverse possession, is not in position to demand higher proof of an assessment than the deed itself.

Argued March 8, 1910. Appeal, No. 243, Jan. T., 1909, by defendant, from judgment of C. P. Monroe Co., Dec. T., 1907, No. 22, on verdict for plaintiff in case of Delaware, Lackawanna & Western Railroad Company v. Tobyhanna Company, Limited. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Ejectment for land in Coolbaugh township. Before STAPLES, P. J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in overruling defendant's objection to the admission in evidence of the county treasurer's record of taxes assessed against unseated lands in Monroe county; in overruling defendant's objection to the admission in evidence of the county treasurer's record of sales of unseated lands for the year 1846; and of a treasurer's deed executed in said year; and in refusing to admit evidence of more than twenty-one years' adverse possession of the land by defendant.

*F. B. Holmes*, for appellant.—Assuming for the purposes of this argument that it is the established law of this state that title to land lying within the limits of the right of way of a railroad company cannot be acquired by adverse possession, still there is nothing in any of the decided cases which warrants the extension of that principle to land outside of the right of way, and the over-

whelming weight of authority from other states is against
the reason of such a doctrine: Lehigh Valley R. R. Co. v.
Frank, 39 Pa. Superior Ct. 624; P. C. C. & St. L. Ry.
Co. v. Stickley, 155 Ind. 312 (58 N. E. Repr. 192);
Spottiswoode v. R. R. Co., 61 N. J. L. 322 (40 Atl. Repr.
505); Bobbett v. Southeastern Railway Co., L. R. 9 Q.
B. Div. 424; Matthews v. Ry. Co., 110 Mich. 170 (67
N. W. Repr. 1111); Littlefield v. B. & A. R. R. Co., 146
Mass. 268 (15 N. E. Repr. 648); Illinois Central R. R.
Co. v. Houghton, 126 Ill. 233 (18 N. E. Repr. 301).

An assessment regular or irregular was essential to the
validity of this sale; that such assessment must be shown
affirmatively and that want of such assessment is not
cured by the Act of March 11, 1815, 6 Sm. L. 277, are
clearly established principles: Bratton v. Mitchell, 1 W.
& S. 310; McReynolds v. Longenberger, 57 Pa. 13;
Bachop v. Critchlow, 142 Pa. 518; Lyman v. Philadelphia,
56 Pa. 488.

*A. Mitchell Palmer*, with him *C. R. Bensinger*, for ap-
pellee.—Land lying within the limits of a railroad right
of way cannot be acquired by adverse possession: Glis-
son v. R. R. Co., 15 Pa. Dist. Rep. 369; Reading Co. v.
Seip, 30 Pa. Superior Ct. 330; Kopf v. Utter, 101 Pa. 27;
Stevenson's App., 17 W. N. C. 429; Pennsylvania R. R.
Co. v. Freeport Boro., 138 Pa. 91; Lehigh Valley R. R.
Co. v. Frank, 39 Pa. Superior Ct. 624; Pittsburg, etc.,
Ry. Co. v. Peet, 152 Pa. 488; Pittsburg Junction Rail-
road Co.'s App., 122 Pa. 511; Hummel v. Cumberland
Valley R. R. Co., 175 Pa. 537; Lake Shore, etc., Ry. Co. v.
N. Y. C. & St. L. Ry. Co., 8 Fed. Repr. 858; Wilming-
ton, etc., R. R. Co. v. Walker, 15 Pa. Dist. Rep. 373;
P., W. & B. R. R. Co. v. Williams, 54 Pa. 103; New Mex-
ico v. U. S. Trust Co., 172 U. S. 171 (19 Sup. Ct. Repr.
128); U. S. Trust Co. v. Atlantic & P. Ry. Co., 47 Pac.
Repr. 725.

Plaintiff's prima facie title was properly shown on the
trial: Crum v. Burke, 25 Pa. 377; Wells v. Smyth, 55

Pa. 159; Heft v. Gephart, 65 Pa. 510; McReynolds v. Longenberger, 75 Pa. 13; Gamble v. Lumber Co., 225 Pa. 288.

OPINION BY MR. JUSTICE STEWART, July 1, 1910:

As early as 1860, the plaintiff, the Delaware, Lackawanna & Western Railroad Company, then operating an established line of road, anticipating possible future wants purchased a narrow strip of land 700 feet in length by seventy-five in width, adjoining its right of way in the village of Tobyhanna. The lot in dispute here is part of that purchase. When the railroad company recently attempted to make use of the lot, it was found to be in possession of the defendant company. To recover possession this ejectment was brought. On the trial of the case, the plaintiff showed a paper title which the court adjudged sufficient in law to establish a prima facie right. The defendant in reply set up a claim of title by adverse possession in itself and predecessors for more than twenty-one years. The evidence offered to establish such claim was objected to, on the ground that title to land purchased by a railroad company and necessary for its purposes cannot be acquired by adverse possession, however long continued. The objection was sustained and the evidence excluded, with the result that a verdict was rendered for the plaintiff. The appeal from the judgment thus obtained, raises two questions: first, was the evidence offered by plaintiff sufficient to establish a prima facie right? second, was the evidence offered by defendant to show title by adverse possession properly excluded? The first calls for little discussion. A link in plaintiff's chain of title was a treasurer's deed which recited the sale for taxes of a larger tract of unseated land embracing the lot in dispute. When the deed was offered it was objected that no assessment of the land as unseated had been shown; that the deed was not competent evidence to establish such fact, and that without an assessment the deed was invalid. The trial judge was of opinion that, inasmuch as

the defendant company claimed title only through adverse possession, it was not in position to demand higher proof of an assessment than the deed itself, and accordingly overruled the objection. We see no error in this. In Foster v. McDivit, 9 Watts, 341, it is said, "Previous to the Act of March 11, 1815, 6 Sm. L. 277, as has been correctly said, that to rest a title in the purchase of land sold for taxes, an exact and minute adherence to the directions of the laws is necessary. It must appear that every direction and requisite of the acts have been judicially complied with: Wistar v. Kammerer, 2 Yeates, 100; Blair v. Caldwell, 3 Yeates, 284. But this principle is only true as between the purchaser at the tax sale and the person who is the owner of the land, and those claiming under him. . . . All that is required in a plaintiff in ejectment, in the first instance, after showing title out of the commonwealth, as against an intruder, is to prove an actual possession, or where the land is so protected, to exhibit the deed from the commissioners or the treasurer. This is such a prima facie title as is sufficient to put the defendant on proof of a better right." The rule here asserted has never been questioned, and the action of the court in admitting the deed was in strict accordance with it.

The other question calls for somewhat fuller discussion, since we cannot concur in the view expressed by the learned trial judge in his opinion filed in overruling the motion for a new trial. The real question in the case covers much less ground than does the objection urged in the court below to the offer of the evidence. It needs to be defined. It is not whether title to any land purchased by a railroad company can be acquired by adverse possession; but whether title to land purchased by a railroad company, outside its right of way, for railroad purposes, generally, not present but prospective, can be so acquired. It was assumed by the court below that land acquired by a railroad for what is understood as right of way, is not subject to the statute of limitations; and because certain

facilities, such as switches, sidings, turnouts, buildings for fuel, water, engines, stations, etc., which could not in all cases be supplied if the company were limited to its right of way, are as essential to the operation of the railroad, it was argued that like exemption must extend to land acquired by the company for the purpose of affording such facilities or conveniences. In the first place, the assumption is not justified. If it has ever been decided by this court that title to no part of a railroad right of way, as originally established, can be acquired by adverse possession, our attention has not been directed to the case which so decides. In the opinion filed by the learned trial judge, many cases are cited as supporting the view that a right of way of a railroad is something inviolable. All these we have examined, as well as those cited upon the argument of the case. A review of these decisions would unduly lengthen this opinion. It is enough to say that not in a single one of them was the question that here concerns us decided. In several of them the exemption of right of way was assumed arguendo, only to show that it could not be a controlling circumstance in determining the question then before the court. We are not now called upon to decide the question and we express no opinion in regard to it. We simply say that it is an open one so far as our own adjudications are concerned. But, assuming for argument, as was done in the cases referred to, that the right of way of a railroad company is unaffected by the statute of limitations, it certainly does not follow that like immunity must be extended to all land held by a railroad company. There are several points of distinction to be noted. The right of way of a railroad company, whatever its established width, as soon as acquired is impressed with a public use; it constitutes a public highway. The railroad company holds it in trust for the people of the commonwealth. Once it has constructed its road upon it, the company can change the established line of the highway only as it receives legislative permission; it may not even improve the line by straightening it

except as it has legislative authority for so doing. Having once established a highway, its charter power is exhausted with respect to its location, and thereafter it holds the highway, as established, for the general public. Not so with respect to estates in land acquired for facilities in operation, outside the right of way. However important or necessary these may be, the land acquired for such purposes is not impressed with a public use in the same sense. It is for the railroad company to say where these conveniences or necessary facilities shall be located, and how many shall be provided, even anticipating possible future wants; and it is equally within its power to abandon any of them, or change their location at any time. If it has constructed any upon land outside its right of way which it has acquired by ordinary purchase, it may change the use of the land at its pleasure, or it may sell it freely with or without the structure upon it; not by virtue of legislative permission, but because it owns it. If the structure be upon lands acquired by condemnation, it may discontinue the use, abandon the property and restore it to the original owner. In neither case has the public any concern so long as proper facilities are provided. No such public use is impressed upon land acquired for these purposes as interferes with the company's absolute authority over it in the matter of use or disposition, extending even to alienation, where the right is not restrained by the grant itself. But, if we ignore all this, and further assume, as did the court below, that because such facilities as stations, switches, etc., are essential to the operation of the railroad, that therefore the land occupied by them is to be regarded as a part of the highway itself, a clear distinction remains which is of itself controlling in this case. The law makes ample provision for the acquisition by railroad companies of land for these designated purposes outside the right of way. Each is allowed to determine for itself what facilities are needed, where they shall be located, and how much land will be required; and each is given the power to appropriate and

condemn in order to accommodate itself with respect thereto. Now, as we have said, the land so acquired is impressed with a public use. But that cannot be said of land lying outside the right of way, acquired by purchase outright from the owner, and never appropriated by the company to any railroad use. Assuming that the lot in dispute was conveyed in fee to the railroad company, can the company be heard to say more than forty years after the purchase, against one who has possessed it adversely for the statutory period, we bought this land intending some day to use it for railroad purposes, and therefore you can acquire nothing by your adverse possession, when during all this long period, until the bar of the statute was raised, it had the unquestioned right to do with the land what it pleased, use it for any purpose not inconsistent with its charter, or sell it if it so chose? If the estate conveyed the company was only a qualified fee, as might be argued from the language of the deed, this circumstance would concern none but the grantors; the public would have no interest in it. Viewed from any standpoint, this lot was exclusively the property of the railroad company to do with as it pleased, as against everybody unless we have to except the grantors. How can property held in this way, for such a length of time with neither appropriation nor actual dedication, be said to be part of the railroad highway in any sense whatever? For more than forty years the railroad has been operated without it, if the facts be as stated in the offer of evidence which was rejected. How then can it be said to be part of the highway? or, how can it be said that it was in any' sense impressed with a public use? Had the railroad company attempted originally to acquire this particular lot by condemnation, it would have been required to define the purpose for which it was to be used, so that it might appear that the use was to be a public one. An assertion in general terms that the company proposed to take for railroad purposes would not have been sufficient, for railroads may lawfully acquire and hold land for pur-

poses other than those for which they have the right to condemn. It could have condemned it for a depot, and that was the only definite public purpose expressed in the grant; but it does not appear that the company even now wants to devote it to that purpose. So far as appears it may want to devote it to perfectly legitimate railroad purposes, which would not be sufficient to warrant condemnation, and therefore not in the true sense for public use. Were it shown that the loss of this property would seriously endanger the usefulness of the railroad as a public highway, that would be a consideration not to be overlooked; but even this cannot be urged. If necessary, and lost to the railroad through want of vigilance on its part, it can be reacquired. In the exercise of the power of eminent domain the company can condemn it and repossess itself of it; but we know of no other way, except by purchase from those who by asserting their adverse possession of it for more than twenty-one years have acquired a title to it under the inexorable law of the statute of limitations. All this assumes that the facts are as stated in the offer of evidence which was excluded. The evidence offered should have been admitted. The assignment of error which relates to its rejection is sustained, and the judgment is reversed with a venire facias.