61 N.J. Super. 65 (1960)
160 A.2d 138
VETERANS LOAN AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCIS W. WILK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1960.
Decided April 18, 1960.
*67 Before Judges GOLDMANN, CONFORD and HANEMAN.
*68 Mr. James S. Ely argued the cause for defendant-appellant (Messrs. Ely & Ely, attorneys).
Mr. David A. Gelber argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an action by the Veterans Loan Authority, an agency in the State Department of Conservation and Economic Development established under the Veterans Loan Act of 1944 (N.J.S.A. 38:23B-1 et seq.). It is brought on a promissory note dated February 19, 1946, in the original sum of $2,500, given by the defendant, a veteran, to the Rutherford National Bank, and secured by a chattel mortgage covering certain equipment for the operation of a poultry business. After default by the defendant the note was purchased by the plaintiff, in accordance with an agreement when the loan was given, all as provided for by the said act. Loans to veterans approved by the Authority which fall in default are, under the act, guaranteed by the Authority to the lending institution and are purchased by it upon the demand of the obligee substantially for the amount in default.
According to the agreed statement in lieu of record, the note was purchased by the plaintiff from the bank on July 2, 1947. Yet it took no action to recover thereon until August 1954, when it began an action in the Superior Court. That action was dismissed for lack of prosecution in 1956. The present action was instituted January 21, 1959.
In January 1947 the defendant filed a petition in bankruptcy and listed the items covered by the chattel mortgage. The record does not indicate whether the note was listed as a debt and it is not contended that it was discharged in bankruptcy. Thereafter the trustee in bankruptcy was authorized to sell his interest in the mortgaged chattels to the mortgagee. The trustee gave the bank a bill of sale, and, according to the opinion of the trial judge, received *69 $10 therefor (the amount is not stated in the agreed statement of record). It is not argued by either side that this circumstance is material to the issues presented. The trial judge decided that when the bank purchased from the trustee it still held the property only as security (apparently because it paid only a nominal sum), and plaintiff does not dispute this. Subsequently the bank sold the chattels without notice to the defendant, receiving the sum of $250 and crediting $103.60 to the defendant (apparently the balance represented expenses). The chattel mortgage was not foreclosed.
Judge Brown, sitting in the trial court, held that since the mortgagee had sold the property without notice to defendant, he should be credited with the value of the goods at the time of the bank's action. Accordingly, he allowed the defendant a credit of $700, found to be the then value of the goods, less the $103.60 already allowed by the bank, thereby reducing the principal obligation due on the note from $2,185 to $1,588.60, for which he entered judgment, disallowing interest because of the circumstances of the case.

I.
The first point raised on appeal is that the action cannot be maintained at all because the plaintiff has not complied with certain provisions of the act. The first reference is to N.J.S.A. 38:23B-12, subd. c, which provides that the last installments of interest and principal on a note given under the act "shall be payable not exceeding six years from the date of the obligation." The note, dated February 19, 1946, is payable in installments, the last due February 19, 1952. The note is obviously payable exactly six years after its date. It is therefore not in violation of the cited provision.
It is also contended that there was a violation of Section 14, which permits extension and refinancing of a loan "provided, provision is made for complete discharge of the obligation, and interest thereon, not later than six years *70 from the date of the original loan." The argument is rested on the fact that no effort was made to procure a discharge of the obligation until long after the expiration of the six-year period. There is no merit in the contention. The statute does not mean that the note is invalid unless the obligee forces payment within six years, as defendant interprets the statute. It simply means that an agreement may not be made for the recasting or extension of a loan which would give the maker more than six years from the original date to pay it. No such agreement was here made. If, notwithstanding the maker has not expressly been allowed more than six years, he nevertheless defaults and does not pay the note within that period, the act does not purport to inhibit any normal procedure for collecting the obligation, no matter how long it takes to secure payment.

II.
Defendant urges the action is barred by the six-year statute of limitations. N.J.S. 2A:14-1. But the general statute of limitations is not applicable to the government unless included by express language or necessary implication. Trustees for the Support of Public Schools v. Ott & Brewer Co., 135 N.J. Eq. 174, 177-178 (Ch. 1944); and see Eureka Printing Co. v. Division, etc. Dept. of Labor and Industry, 21 N.J. 383, 387-388 (1956).
Distinguish such a case as State v. Atlantic City Electric Co., 23 N.J. 259, 271 (1957), cited by defendant, where the State's assertion of a right of escheat to unclaimed public utility deposits fell before the bar of limitations applicable to the customers' claims against the utility. In the present case the note was assigned to the Loan Authority long before the statute had run. Moreover, the ultimate contingency of the State's subrogated right in the note was inherent in the nature of the statutory scheme, and the matured interest of the State was of a public rather than proprietary character, emanating from the legislative motivation *71 to assist war veterans in rehabilitating themselves upon return to civilian pursuits. Nothing in the statute requires an implication of legislative forbearance of the State's presumptive immunity from the statute of limitations. See also 34 Am. Jur., Statute of Limitations, § 395, p. 308; § 399, pp. 313-4.

III.
Defendant argues that the retaking of possession of the chattels by the mortgagee and disposition of them without notice to him as mortgagor operated to satisfy and discharge the mortgage debt. The contention cannot be sustained.
New Jersey's Chattel Mortgage Act, R.S. 46:28-1 et seq., as amended, unlike those of many of our sister states, is devoid of provision for foreclosure procedures except where the chattels are household goods, R.S. 46:28-13. See generally 14 C.J.S. Chattel Mortgages § 362(b), p. 1013, § 364, p. 1015. Hence it is well settled, under common-law principles, that upon default by the mortgagor on the secured debt the mortgagee may take and sell the chattels, applying the proceeds to the debt, there being no requirement for a judicially-ordered public sale. See, e.g., Bird v. Davis, 14 N.J. Eq. 467, 474 (Ch. 1862); Freeman v. Freeman, 17 N.J. Eq. 44, 47-48 (Ch. 1864); Abrams v. Brown, 122 N.J. Eq. 563, 565 (Ch. 1937); Mausert v. Mutual Distributing Co., 92 N.J.L. 190, 191 (E. & A. 1918); Geiger v. Metz, 11 N.J. Super. 134, 138 (Law Div. 1950).
Nevertheless, while the mortgagor's equity of redemption in the chattels is not a creature of statute, our courts have held it a necessary concomitant of the security transaction, with the result that the mortgagor is entitled to notice of the sale and to have the sale made, if not publicly, at least under such conditions as will assure the realization of the fair value of the goods. See the cases cited above; also Farrow v. Ocean County Trust Co., 121 N.J.L. 344 *72 (Sup. Ct. 1938); Annotation, 30 A.L.R.2d 539, 540 (1953). Consequently, despite the absence of a notice provision in the power of sale clause in the mortgage instrument, defendant was still entitled to receive notice of the sale in order to protect his equity of redemption, which is not claimed to have been waived.
A private sale of mortgaged chattels without notice to the mortgagor was determined in the Bird case, supra, not to constitute a discharge of the underlying debt, but, rather, only to warrant a credit against the debt of the difference, if any, between the fair value of the goods at the time they were sold and the actual proceeds of the sale. This the instant trial judge allowed after finding such a discrepancy and determining the amount thereof.
While there are reported cases wherein the mortgagee's resort to the security was held to discharge the underlying debt, precluding him for later seeking a deficiency judgment, those decisions are not applicable here. That consequence follows a private sale of the chattels without notice either on the theory that such a sale constitutes a forfeiture by the mortgagee of the deficiency or evidences the mortgagee's intention to satisfy himself exclusively from the security. The forfeiture theory, however, is applicable only in so-called "lien" states (where the mortgagee gets no legal title to the goods), a private sale without notice being deemed a conversion of the goods, Metheny v. Davis, 107 Cal. App. 137, 290 P. 91 (Dist. Ct. App. 1930); Lessard v. Smith, 45 Wash.2d 473, 275 P.2d 730 (Sup. Ct. 1954); and see Franklin National Bank v. Austin, 99 N.H. 59, 104 A.2d 742, 744 (Sup. Ct. 1954), or in jurisdictions where a particular statutory provision expressly declares that failure to conform with the specified sale and foreclosure procedures will result in forfeiture of deficiency, see, e.g., Midland Discount Co. v. White, 109 N.E.2d 338 (Ohio C.P. 1952). New Jersey is not a lien state, Chapman v. Hunt, 13 N.J. Eq. 370, 373 (Ch. 1861), nor has it chosen to provide any statutory foreclosure procedure for chattel mortgages.
*73 It may well be that notwithstanding the foregoing the activity of a mortgagee in a particular case might justify the factual conclusion of an intent to discharge the debt as manifested in his dealing with the goods. But this cannot be presumed from the mere seizure and sale of the chattels without notice. That the present mortgagee intended to discharge the debt by resorting to the security is not a conclusion comporting with the factual circumstances indicated here. It is plainly inferable from the record that the value of the goods covered by the chattel mortgage was, at the time of its execution, substantially less than the debt evidenced by the note, so that when the obligation was first created, it was as a practical matter only partially secured. Thus, the bank could not originally have considered the mortgage full security and would not likely have so regarded it until the debt had decreased to such an extent as to equal the value of the security. This had not yet come about at the time of the default. Moreover, the bank here at all times was obviously expecting to be made whole eventually, if necessary by calling upon the Loan Authority to purchase the note in event of default, pursuant to the statute. This, too, negated any intent on its part to discharge the obligation.
Veterans Loan Authority v. Rozella, 21 N.J. Super. 1 (App. Div. 1952), relied upon by defendant, is not in point. That case involved a conditional sales contract, controlled by the specially applicable Uniform Conditional Sales Law, R.S. 46:32-1 et seq., as amended. It is not authoritative as to chattel mortgages.
Affirmed.