439 A.2d 101

COMMONWEALTH, DEPARTMENT OF TRANSPORTATION, Appellant,

v.

J. W. BISHOP & COMPANY, INC.,

COMMONWEALTH, DEPARTMENT OF TRANSPORTATION, Appellant,

v.

George H. OVERMOYER.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1981.

Decided Dec. 21, 1981.

Mark F. Brancato, Asst. Counsel, Ward T. Williams, Chief Counsel, Harrisburg, for appellant.

F. Lee Shipman, Timothy I. Mark, Harrisburg, for J. W. Bishop & Co., Inc.

David E. Lehman, Harvey Freedenberg, Harrisburg, for George H. Overmoyer.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ At issue on these appeals is the applicability of statutes of limitations to actions brought by the Commonwealth. We reaffirm the long-standing rule that such statutes do not apply to the Commonwealth unless the statute specifically so provides. Hence, we vacate the orders of the Commonwealth Court and remand for further proceedings.

These appeals arise out of two separate actions. In the case against appellee J. W. Bishop & Co., Inc., a bridge owned by the Commonwealth collapsed when Bishop's allegedly overweight vehicle passed over it on June 6, 1969. In the case against appellee George H. Overmoyer, another bridge owned by the Commonwealth collapsed under Overmoyer's allegedly overweight truck on April 4, 1969. The total cost of repairs to the two bridges exceeded $150,000.

Appellant Department of Transportation filed a complaint in trespass against Bishop on May 5, 1976, six years and eleven months after the incident involving Bishop. A similar complaint was filed against Overmoyer on August 25, 1977, eight years and four months after the incident involving Overmoyer. The respective complaints allege that the extra weight of the vehicles caused the bridges to collapse. Bishop and Overmoyer contended that the six-year statute of limitations precluded recovery.[1] The Commonwealth Court initially rejected Bishop's contention on the ground

1. The relevant statute of limitations provides:
   "All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and mer-

that the Commonwealth was exempt from the statute under the doctrine of *nullum tempus occurrit regi* ("time does not run against the king").[2] *Commonwealth Dep't of Transportation v. J. W. Bishop & Co.*, 29 Pa.Cmwlth. 285, 370 A.2d 747 (1977). Subsequently, however, a divided Commonwealth Court held in both cases that the abrogation of sovereign immunity in *Mayle v. Pennsylvania Dep't of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), compelled the abrogation of the doctrine of *nullum tempus. Commonwealth, Dep't of Transportation v. J. W. Bishop & Co.*, 55 Pa. Cmwlth. 377, 423 A.2d 773 (1980) (Wilkinson, J., joined by Williams, J., dissenting; Mencer, J., dissenting).[3] These appeals followed.

 This Court has always adhered to the "old and well known rule that statutes which in general terms divest

chant, their factors or servants), all actions of debt grounded upon any lending, or contract without specialty, all actions of debt for arrearages of rent, except the proprietaries' quit-rents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord one thousand seven hundred and thirteen, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, for goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after. And the said actions of trespass, of assault, menace, battery, wounding, imprisonment, or any of them, within one year next after the said five and twentieth day of April next, or within two years next after the cause of such actions or suit, and not after; and the said actions upon the case for words, within one year next after the words spoken, and not after." Act of March 27, 1713, § 1, 1 Sm.L. 76, formerly 12 P.S. § 31, repealed by the Act of April 28, 1978, P.L. 202, now 42 Pa. C.S. § 5527.

2. The maxim is sometimes expressed *nullum tempus occurrit republicae* ("time does not run against the state").

3. Bishop sought a redetermination of the statute of limitations issue after this Court's decision in *Mayle*, supra. No question has been raised as to the propriety of Bishop's effort to obtain such a redetermination.

pre-existing rights or privileges do not bind the sovereign without express words to that effect."[4]   See *Pennsylvania Labor Relations Bd. v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975); *Keifer Appeal*, 430 Pa. 491, 243 A.2d 336 (1968); *Hoffman v. City of Pittsburgh*, 365 Pa. 386, 75 A.2d 649 (1950); *Appeal of Reading Co.*, 343 Pa. 320, 22 A.2d 906 (1942); *State Employee's Retirement System v. Dauphin County*, 335 Pa. 177, 6 A.2d 870 (1939); *Baker v. Kirschneck*, 317 Pa. 225, 176 A. 489 (1934).   See also 1 Pa. C.S. § 1922(5) (Legislature intends to favor public over private interest).   Thus the doctrine of *nullum tempus* has long been followed in Pennsylvania.   This Court has consistently held that a claim of title by adverse possession does not lie against Commonwealth property. *Hostetter v. Commonwealth*, 367 Pa. 603, 80 A.2d 719 (1951); *Commonwealth v. Baldwin*, 1 Watts 54 (1832); *Bagley v. Wallace*, 16 Serg. & Rawle 245 (1827); *Morris v. Thomas*, 5 Binn. 76 (1812). Even privately owned property which has been dedicated to public use is not subject to a claim of title by adverse possession.   The land becomes "impressed with a public use; it constitutes a public highway. [It is held] in trust for the people of the Commonwealth." *Conwell v. Philadelphia & Reading Ry. Co.*, 241 Pa. 172, 174, 88 A. 417, 418 (1913) quoting *Delaware, Lackawanna & Western R. R. Co. v. The Tobyhanna Co.*, 228 Pa. 487, 492, 77 A. 811, 813 (1910). Accord, *Keifer Appeal*, supra; *Hoffman v. City of Pittsburgh*, supra; *Graham & Co. v. Pennsylvania Turnpike Comm'n.*, 347 Pa. 622, 33 A.2d 22 (1943); *Western New York & Pennsylvania Ry. Co. v. Vulcan Foundry & Machine Co.*, 251 Pa. 383, 66 A. 830 (1916); *Commonwealth v. Alburger*, 1

4.   *United States v. United Mine Workers*, 330 U.S. 258, 272, 67 S.Ct. 677, 686, 91 L.Ed. 884, 902 (1947) (footnote omitted).   See *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976); *United States v. Wittek*, 337 U.S. 346, 69 S.Ct. 1108, 93 L.Ed. 1406 (1949); *United States v. Herron*, 87 U.S. 251, 22 L.Ed. 275 (1874); *United States v. Knight*, 39 U.S. 301, 10 L.Ed. 465 (1840).

Whart. 469 (1836); *Commonwealth v. McDonald,* 16 Serg. & Rawle 389 (1827).[5]

The *nullum tempus* doctrine has also been uniformly applied to personal actions where the Commonwealth proceeds as plaintiff. Thus, where the "Commonwealth is seeking . . . in trespass to recover appropriate damages for the injury suffered through the alleged conspiracy of the defendants to defraud it, the statute of limitations on trespass actions for tort can have no applicability." *Commonwealth v. Musser Forests, Inc.,* 394 Pa. 205, 218, 146 A.2d 714, 720 (1958). See also *Frey's Estate,* 342 Pa. 351, 21 A.2d 23 (1941); *Commonwealth v. Central Realty Co.,* 338 Pa. 172, 12 A.2d 312 (1940); *Commonwealth v. Hutchinson,* 10 Pa. 466 (1849); *Glover v. Wilson,* 6 Pa. 290 (1847); *Commonwealth v. Johnson,* 6 Pa. 136 (1847); *McKeehan v. Commonwealth,* 3 Pa. 151 (1846).

The same rule has been uniformly applied to the United States government. Thus, in *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), the Court held that a Florida statute which barred claims against estates which were filed more than eight months after first notice was given to creditors could not prevent the United States government from presenting its claims. See also *United States v. John Hancock Mutual Life Insurance Co.,* 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960) (Kansas statute giving mortgagor exclusive right to redeem mortgage within one year of judicial foreclosure does not extinguish right of United States to redeem its interest within that period). So too, the United States cannot be barred when it sues as guardian on behalf of Indian wards. *United States v.*

**5.** Most jurisdictions abide by the Pennsylvania rule that, without express words to the contrary, statutes of limitations do not apply to the state. See, e.g., *Re Estate of Darwin,* 503 S.W.2d 511 (Tenn. 1973); *State, Dep't of Roads v. Merritt Bros. Sand & Gravel Co.,* 180 Neb. 660, 144 N.W.2d 180 (1966); *State v. Berry,* 8 Ohio App.2d 72, 220 N.E.2d 671 (1966); *Hinshaw v. Dep't of Welfare,* 157 Colo. 447, 403 P.2d 206 (1965); *Veteran's Loan Authority v. Wilk,* 61 N.J.Super. 65, 160 A.2d 138 (1960); *Re Will of Bogert,* 64 N.M. 438, 329 P.2d 1023 (1958); *People v. Continental Casualty Co.,* 118 Cal.App.2d 133, 257 P.2d 495 (1953); *Heidt v. Caldwell,* 41 So.2d 303 (Fla.1949).

*Nashville,* 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 (1885); *United States v. Phillips,* 56 F.2d 447 (1931). Similarly, "the great interests of the Government in [the] ocean area are not to be forfeited ..." by the passage of time. "The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property." *United States v. State of California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889, 1900 (1947).

█ Like the doctrine of sovereign immunity, the doctrine of *nullum tempus* appears to have had its roots in the prerogative of the Crown. See 1 Blackstone, Commentaries * 247–8; *Guaranty Trust Co. of New York v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Appellees maintain that because of the common ancestry of the two doctrines, this Court's abrogation of sovereign immunity mandates the abrogation of *nullum tempus.*

Despite their common origin, the doctrines have been consistently recognized as distinct. Whenever the Commonwealth invokes the doctrine of *nullum tempus,* it is seeking as a plaintiff to vindicate public rights and protect public property. Thus, since its adoption in this country, the rationale for the doctrine of *nullum tempus* has been "the great public policy of preserving public rights, revenues and property from injury and loss." *United States v. Hoar,* 26 Fed.Cas. 329, 330 (C.C.D.Mass.1821) (No. 15,373) (Story, J.). See *Musser Forests,* supra (*nullum tempus* "matter of important public policy"). Moreover, the benefits and advantages of the doctrine of *nullum tempus* extend "to every citizen, including the defendant whose plea of ... limitations it precludes." *Guaranty Trust,* supra, 304 U.S. at 132, 58 S.Ct. at 789. On the other hand, when the Commonwealth appears as a defendant and invokes the defense of sovereign immunity, it seeks to deny those whom it has allegedly wronged the opportunity to obtain relief. Thus, sovereign immunity "a carryover from the English doctrine that 'the King can do no wrong' ", *Mayle,* supra, 479 Pa. at 387, 388 A.2d at 710, has been defended on the theory that without it

the courts would be overburdened and the Commonwealth financially imperiled. It has never been justified on the basis of the need to protect public rights.

The distinction between the Commonwealth as defendant and the Commonwealth as plaintiff has long been recognized. Chief Justice Gibson was critical of the doctrine of sovereign immunity:

"At the declaration of American independence prerogatives which did not concern the person, state, and dignity of the King, but such as had been held by him in trust for his subjects, were assumed by the people here and exercised immediately by themselves; among the rest, unwisely I think, the prerogative refusing to do justice on compulsion."

*O'Connor v. Pittsburgh*, 18 Pa. 187, 189 (1851). Yet, without reservation, Chief Justice Gibson endorsed the doctrine of *nullum tempus:*

"It is certain that so much of the prerogative as appertained to the King by virtue of his dignity, is excluded by the nature of our government, which possesses none of the attributes of royalty; but so much of it as belonged to him in the capacity of parens patriae, or universal trustee, enters as much into our political compact as it does into the principles of the British constitution. Why should it not do so peculiarly, where the maxim *salus populi* [*suprema lex* ("the welfare of the people is the supreme law")] is the predominant principle of a government, to whose operations and well-being the prerogative is as essential as to those of a monarchy? The necessity of it, in regard to statutes of limitations, is peculiarly apparent."

*Commonwealth v. Baldwin*, 1 Watts 54, 54–55 (1832).

■ Notwithstanding this important and historically recognized distinction, appellees maintain that by exempting the Commonwealth from the statute of limitations the doctrine of *nullum tempus* permits the Commonwealth to gain an unfair advantage with the passage of time. Appellees overlook the fact that the passage of time also works to the disadvantage of the Commonwealth. No special dispensa-

tion from the rules of evidence is accorded to the Commonwealth. Like private parties, the Commonwealth "must meet the burden of proof, its evidence must be relevant, material, the best attainable, and [the evidence] must be presented in due order under the regular rules of procedure." 13 Standard Pennsylvania Practice Ch. 61, § 23, p. 192. See *Frey's Estate*, 342 Pa. 351, 21 A.2d 23 (1941) (in action for sum due, Commonwealth exempt from statute of limitations but not from adverse operation of presumption that debt has been paid).

Whatever inconvenience defendants may experience, that inconvenience is outweighed by the sound policy of vindicating public rights and protecting public property which underlies the doctrine of *nullum tempus occurrit regi*. Because the statute of limitation at issue does not expressly apply to the Commonwealth, the orders of the Commonwealth Court are vacated and the cases remanded for proceedings consistent with this opinion.

Orders vacated and cases remanded.

O'BRIEN, C. J., concurs in the result.

WILKINSON, J., did not participate in the consideration or decision of this case.