THE STATE OF OHIO, DEPARTMENT OF TRANSPORTATION, APPELLEE, *v.* SULLIVAN, APPELLANT.

[Cite as Ohio Dept. of Transportation *v.* Sullivan (1988), 38 Ohio St. 3d 137.]

(No. 87-1209—Submitted April 6, 1988—Decided August 10, 1988.)

138

*Anthony J. Celebrezze, Jr.,* attorney general, *Kathleen McManus, George R. McCue III* and *Wyatt McDowell,* for appellee.

*A. William Zavarello Co., L.P.A., A. William Zavarello* and *Elinore Marsh Stormer,* for appellant.

HOLMES, J. The sole issue presented for our review is whether the long-established rule, that a statute of limitations does not apply as a bar to the rights of the state unless expressly named in the statute, has become outdated and without effect. Appellant argues that such rule is no longer viable in light of this court's long line of cases abrogating the common-law doctrine of sovereign immunity that had previously been afforded municipalities and other political subdivisions[2] and the state's limited waiver of sovereign immunity in R.C. Chapter 2743.[3] Because we hold that the policy reasons supporting the rule at issue are separate from the issues concerning sovereign immunity, and because we hold that such policy reasons support the continued applicability of the rule, we answer such query in the negative and affirm the court of appeals.

Federal and state courts throughout the United States seem to have uniformly held that the federal government and state governments are not bound by the terms of a general statute of limitations. In *Guaranty Trust Co. v. United States* (1938), 304 U.S. 126, the United States Supreme Court stated at 132 that this rule "* * * appears to be a vestigial survival of the prerogative of the Crown. * * * [Citations omitted.] But whether or not that alone accounts for its origin, the source of its continuing vitality where the royal privilege no longer exists is to be found in the public policy now underlying the rule even though it may in the beginning have had a different policy basis. Compare Maine, Ancient Law (10th ed., 1930) 32 *et seq. 'The true reason * * * is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers. * * *'* [T]he rule is supportable now because its benefit and advantage extend to every citizen, including the defendant, whose plea of

---

[2] *Schenkolewski* v. *Cleveland Metroparks System* (1981), 67 Ohio St. 2d 31, 21 O.O. 3d 19, 426 N.E. 2d 784; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228 (municipal corporations); *Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212, 6 OBR 264, 451 N.E. 2d 1229 (school boards); *Marrek* v. *Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St. 3d 194, 9 OBR 508, 459 N.E. 2d 873 (park districts); *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199, 9 OBR 511, 459 N.E. 2d 877 (public libraries); and *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, 9 OBR 516, 459 N.E. 2d 881.

[3] Am. Sub. H.B. No. 800, effective January 1, 1975 (135 Ohio Laws, Part II, 869, 871 *et seq.*).

laches or limitation it precludes; and its uniform survival in the United States has been generally accounted for and justified on grounds of policy rather than upon any inherited notions of the personal privilege of the king. * * * [Citations omitted.]" (Emphasis added.) See, also, *Block* v. *North Dakota, ex rel. Bd. of University & School Lands* (1983), 461 U.S. 273.

This court has on a number of occasions held that the state of Ohio is not subject to general requirements of statutes of limitations unless the statute in question has specifically included the government by its terms. In *Trustees of Greene Twp.* v. *Campbell* (1864), 16 Ohio St. 11, 14, this court stated its adherence to the general rule as follows:

"Being of opinion, therefore, that at the time of the commission of the alleged trespasses, the title to the lands described in the petition was vested in the state, the question arises, whether the remedy upon the cause of action stated is barred by the statute of limitations? We are of the opinion that it is not. The general words of the statute do not include the government. The doctrine is well settled, in the absence of a statute to the contrary, that no laches is to be imputed to the government, and against it no time runs so as to bar its rights."

Again, this court spoke of the rule in *State, ex rel. Parrott,* v. *Bd. of Public Works* (1881), 36 Ohio St. 409, 414, when it stated "that a sovereign state, which can make and unmake laws, in prescribing general laws intends thereby to regulate the conduct of subjects only, and not its own conduct." In *Heddleston* v. *Hendricks* (1895), 52 Ohio St. 460, 465, 40 N.E. 408, 409, this court further justified the rule, "for the reasons that the same active vigilance cannot be expected of it, as is known to characterize that of a private person,

always jealous of his rights and prompt to repel any [i]nvasion of them." See, also, *Ohio, ex rel.,* v. *Railway Co.* (1895), 53 Ohio St. 189, 41 N.E. 205; *Wasteney* v. *Schott* (1898), 58 Ohio St. 410, 51 N.E. 34.

Finally, as the rule is an attribute of sovereignty only, it does not extend to townships, counties, school districts or boards of education, and other subdivisions of the state, nor, at least in some cases, to municipalities. *Lessee of Cincinnati* v. *First Presbyterian Church* (1838), 8 Ohio 298; *Mount* v. *Lakeman* (1871), 21 Ohio St. 643; *Oxford Twp.* v. *Columbia* (1882), 38 Ohio St. 87; *Heddleston, supra; Hartman* v. *Hunter* (1897), 56 Ohio St. 175, 46 N.E. 577; *State, ex rel. Bd. of Edn.,* v. *Gibson* (1935), 130 Ohio St. 318, 4 O.O. 352, 199 N.E. 185; Gill, Sovereign Immunity Under Statutes of Limitation (1955), 16 Ohio St. L.J. 178.

Appellant argues that this general rule has lost its original justification, "[g]iven the universal use of instant communications, computers, a highly organized, compartmentalized government, and the [state's] waiver of immunity from suit." We are not prepared to accept, out of hand, appellant's proposition that the state's use of instant communications and computers is at all universal, or that the use of such technology by even a highly organized and compartmentalized state government is as effective at zealously asserting the rights of the public at large as an individual is of his or her own rights. A more plausible generalization could be drawn: that our everchanging, increasingly complex society places even more demands on the limited resources of our state government than were visited on it one hundred years ago, with a concomitant increase in the risk of laches, neglect and mistake.

Moreover, the abolition of sov-

ereign immunity by R.C. Chapter 2743 and recent decisions of this court did not serve to strip the state of all the privileges of sovereignty and place it in absolute parity with all other litigants. The limitations on the state's consent to be sued are manifest in the Tort Claims Act itself, not the least of which was the creation of a special tribunal wherein all such actions must be heard. R.C. 2743.03. Most important, R.C. Chapter 2743 governs only suits *against* the state. It has no application to suits initiated by the sovereign against its citizens in courts of general jurisdiction. The limited abolition of the state's sovereign immunity by the General Assembly, and then the judicial abrogation of municipal and local governmental sovereign immunity, were in response to expressions of dissatisfaction with the ancient maxim, "the king can do no wrong." In contrast, the rule of *nullum tempus occurrit regi*—time does not run against the king—is an express recognition that the sovereign, acting through agents who are " 'continually busied for the public good,' " can on occasion be somewhat less than imbued with alacrity in preserving the rights of the public. *Div. of Aid for the Aged* v. *Wargo* (1947), 48 Ohio Law Abs. 47, 52, 73 N.E. 2d 701, 703. This is as true today as it was in monarchial times.

We are not alone in our rejection of the argument that the abrogation of sovereign immunity mandates the abolition of the state's exemption from statutes of limitations. In *Commonwealth, Dept. of Transp.* v. *J.W. Bishop & Co.* (1981), 497 Pa. 58, 439 A. 2d 101, the Supreme Court of Pennsylvania noted at 64, 439 A. 2d at 104, that the state's exemption from statutes of limitations is based on " 'the great public policy of preserving public rights, revenues and property from injury and loss,' " whereas the doctrine of sovereign immunity, invoked by the state as defendant, "seeks to deny those whom it has allegedly wronged the opportunity to obtain relief." *Id.* The Supreme Court of Illinois, after making the same distinction between the two doctrines as the Pennsylvania court, concluded in *Shelbyville* v. *Shelbyville Restorium* (1983), 96 Ill. 2d 457, 463, 451 N.E. 2d 874, 877:

"* * * Nor are we convinced that abandonment of government immunity from statutes of limitation would be wise. Inasmuch as citizens who share a public right which has been violated may be unable in certain cases to bring suit on their own behalf while the government has a representative interest in the controversy * * * [citations omitted], abolition of the government's immunity from limitations defenses would expose these citizens to the harsh consequences of neglect by officials over whose actions they had no control." See, also, *Port Authority of New York & New Jersey* v. *Bosco* (1984), 193 N.J. Super. 696, 475 A. 2d 676.

Accordingly, we hold that the state of Ohio, absent express statutory provision to the contrary, is exempt from the operation of a generally worded statute of limitations. As statutes of limitations are determined in the first instance by the General Assembly, we believe the applicability of a given statute of limitations to the state is also best left to that body.

In the instant case, the parties do not dispute that the statute of limitations relevant to the state's action against Sullivan for her alleged negligence is that contained in R.C. 2305.10:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

This general statute of limitations is not expressly made applicable to the state. Cf. R.C. 2305.26. Thus, the

state's action against Sullivan, filed more than two years after the date of her accident, was not time-barred.

The judgment of the court of appeals is accordingly affirmed.

*Judgment affirmed.*

MOYER, C.J., and LOCHER, J., concur.

WRIGHT, J., concurs in the syllabus and judgment.

SWEENEY and H. BROWN, JJ., dissent.

DOUGLAS, J., not participating.

WRIGHT, J., concurring. I concur in the syllabus law and the result announced by my colleague, Justice Holmes. The opinion correctly states the ruling case law and properly defers to the General Assembly with respect to a change in the rule of *nullum tempus occurrit regi.* However, I must express my personal reservations concerning the public policy considerations underlying this particular rule of law.

I view this doctrine as an anachronism that has long since outlived its usefulness and propriety. The plain truth of the matter is that we *are* living in an age of instant communication and highly organized, compartmentalized government. I regard rewarding sloth by a public agency or its employees as anathema. Likewise, I am not enamored with the notion that the state may sue at its leisure while some taxpayer's records draw dust and his or her witnesses' memories fade. I would hope the General Assembly would give this issue the sympathetic attention it richly deserves.

H. BROWN, J., dissenting. I concede that the majority correctly reads the ancient law of Ohio to the effect that statutes of limitations do not run against the state unless the statute is expressly made applicable to the state. The rule is expressed by the quaint Latin phrase *nullum tempus occurrit regi,* meaning, time does not run against the king. My dissent, however, is not grounded on the fact that the Ohio case law relied upon by the majority is a century old or the fact that Ohio has no king. Nor do I think that the majority is wrong when it concludes that the abrogation of sovereign immunity is irrelevant to the issue before us.

I respectfully dissent because I believe that the statutes of limitations in Ohio are, by the plain language chosen by the legislature, made applicable to the state. The majority notes that the statute of limitations which would govern the state's action against Linda Sullivan is R.C. 2305.10. That is correct insofar as setting the time for bringing suit. However, the majority fails to mention R.C. 2305.03, *the statute which governs the applicability of R.C. 2305.10.* When the plain language of R.C. 2305.03 is read it becomes clear that the state has lost its right to sue Sullivan. R.C. 2305.03 provides:

"*A civil action,* unless a different limitation is prescribed by statute, *can be commenced only within the period prescribed in sections 2305.03 to 2305.22,* inclusive, of the Revised Code. When interposed by proper plea by a party to an action mentioned in such sections, lapse of time shall be a bar thereto." (Emphasis added.)

Surely, the majority does not ask us to indulge in the fantasy that the state's suit against Sullivan is not a civil action. A "civil action" is defined in R.C. 2307.01 as:

"An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a

judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense."

It makes no more sense to except the state from the statute of limitations than it does to apply a different rule to the state with regard to pleadings, evidence, depositions, judgment, trial procedure, rights to appeal and the other Revised Code sections which govern the maintenance of civil actions.

Since the state's suit against Sullivan is a civil action, the statute of limitations contained in R.C. 2305.10 should apply as the legislature has decreed. As the majority has said, the applicability of statutes of limitations is best left to the General Assembly. Unfortunately, the majority does not adhere to what the General Assembly has enacted.

Where *no* statute of limitations is applied against the state, a defendant remains vulnerable for years, even unto succeeding generations, for such indiscretions as hitting the guardrail on a highway bridge. It requires no listing of examples to imagine the undesirable results.

As a final matter, I take issue with the public policy argument espoused in support of the result achieved by the majority. The majority contends that the true reason for its rule is to be found in preserving public rights, revenues and property from loss by the negligence of public employees. This, says the majority, supplants the notion of protecting the prerogative of the crown.

The majority, in its laudable aim of protecting the public purse, has, it seems to me, misread human nature and the bureaucratic process. Inviting the state to dally without limitation in the pursuit of revenues or public rights is not likely to produce better results than would be achieved by requiring the state to proceed as expeditiously as every other civil litigant.

In the modern world, where kings, queens and Latin phrases are largely a relic of the past and where the state is in court on civil actions more frequently than, perhaps, any other litigant, the state should play by the same rules as everyone else. Logic, the statutory language enacted by the General Assembly and public policy demand as much.

SWEENEY, J., concurs in the foregoing dissenting opinion.