549 A.2d 246

Commonwealth of Pennsylvania, Petitioner v. Rhoderic L. Seymour, Jr., The Estate of Lois Seymour and Jaimie R. Ebersole, Respondents.

*Richard W. Sponseller,* Deputy Attorney General, with him, *Robert A. Graci,* Chief Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for petitioner.

*Janis M. Rozelle,* with her, *Harry M. Ness,* for respondent, The Estate of Lois Seymour.

*William C. Costopoulos, Kollas, Costopoulos, Foster & Fields,* for respondent, Jaimie R. Ebersole.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 17, 1988:

The Commonwealth has filed a petition to divest property and restrict future activities[1] of respondents Rhoderic L. Seymour, Jr., the estate of Lois Seymour and Jaimie R. Ebersole. The respondents have moved for judgment on the pleadings.

Rhoderic Seymour and Ebersole, former coin shop proprietors, were convicted in 1982 and 1983, respec-

---

[1] This action was filed in our original jurisdiction pursuant to the provisions of the Pennsylvania Crimes Code governing corrupt organizations, 18 Pa. C. S. §911(d)(1)(i).

tively of receiving stolen property. Lois Seymour who also held an interest in the coin shop business, was never charged with any criminal violations and has since died. On April 3, 1985, acting upon search warrants, York County law enforcement officers seized property consisting of precious metals and stones, coins, jewelry and other items held by the respondents in several safe deposit boxes and wall safes. York County police transferred the property to the Attorney General's office as evidence in a statewide grand jury investigation. According to the Commonwealth's petition, the respondents engaged in racketeering activity in the years 1979 to 1982, in which numerous burglaries were committed and from which they received the stolen property at issue here.

In November 1986, Ebersole and Lois Seymour's estate petitioned the York County Common Pleas Court for return of the property,[2] which, after granting several continuances to facilitate negotiations, released a portion. In 1987, Ebersole resumed negotiations to obtain the release of the remaining property. The parties agreed that the Commonwealth would file the instant divestment petition, which we are now asked to rule upon.

A motion for judgment on the pleadings may only be granted where no material facts are at issue and the law is so clear that a trial would be fruitless. All facts properly pleaded by the non-moving party are to be accepted as true. *Beardell v. Western Wayne School District*, 91 Pa. Commonwealth Ct. 348, 496 A.2d 1373 (1985).

Respondents contend that based on the two-year limitation period provided in Section 5524(5) of the Judicial Code,[3] the Commonwealth's divestment petition,

---

[2] Pa. R.Crim.P. 324.
[3] 42 Pa. C. S. §5524(5).

filed September 28, 1987, was untimely because the last criminal act was alleged in the petition to have occurred over five years before, on March 30, 1982.

The Commonwealth responds that because this action is essentially a *civil* proceeding, statutes of limitations otherwise applicable to such proceedings or to the underlying criminal activities do not apply. Rather, under the doctrine of *nullum tempus occurit regi* (time does not run against the King), there is no controlling time limitation.[4]

The doctrine of *nullum tempus* was reaffirmed by our Supreme Court in *Department of Transportation v. J.W. Bishop & Co.*, 497 Pa. 58, 439 A.2d 101 (1981),[5] wherein the Court held that statutes of limitations do not apply to the Commonwealth unless a statute specifically so provides.

The provisions of the Pennsylvania Crimes Code governing corrupt organizations,[6] pursuant to which this action was initiated, is primarily a *criminal* statute governing the prosecution of racketeering offenses.

---

[4] Respondents also contend that the Commonwealth's petition is barred by Section 5552 of the Judicial Code, 42 Pa. C. S. §5552. We reject this contention because Section 5552 clearly applies only to the initiation of criminal prosecutions, not the civil action presently before us, regardless of respondents' characterization of this proceeding as quasi criminal.

[5] In *J.W. Bishop*, the Supreme Court overruled this Court's earlier holding that the abrogation of sovereign immunity mandated the abrogation of the *nullum tempus* doctrine. *See Department of Transportation v. J.W. Bishop & Co.*, 55 Pa. Commonwealth Ct. 377, 423 A.2d 773 (1980). The Supreme Court explained that whereas sovereign immunity had been justified on the theory that the public right to sue the government could be *forfeited* as to prevent overburdening of courts and jeopardizing of Commonwealth's financial integrity, the rationale for *nullum tempus* was to *preserve* public rights, revenues and properties in actions where the Commonwealth is proceeding as a plaintiff.

[6] Commonly referred to as the Corrupt Organizations Act.

However, Section 911(d) provides for *civil* remedies and reads in pertinent part:

**(d) Civil remedies.—**

(1) The several courts of common pleas, and the Commonwealth Court, shall have jurisdiction to prevent and restrain violations of subsection (b) of this section by issuing appropriate orders, including but not limited to:

(i) ordering any person to divest himself of any interest direct or indirect, in the enterprise; imposing reasonable restrictions on the future activities or investments of any person, including but not limited to prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in;

. . . .

(4) *Proceedings under this subsection,* at pretrial, trial and appellate levels, *shall be governed by* the Pennsylvania Rules of Civil Procedure and *all other rules and procedures relating to civil actions,* except to the extent inconsistent with the provisions of this section.

(Emphasis added.)

Thus, the statute's plain language indicates that these proceedings are civil in nature. Moreover, we note that there is no limitation period expressly applicable to a petition filed pursuant to Section 911(d) of the Crimes Code. Thus, *nullum tempus* would apply since the statute does not provide for a limitation period *against the Commonwealth*.

However, respondents rely on Section 5524(5) of the Judicial Code, which, as it existed at the time of the last alleged criminal act, provided that: "The following actions and proceedings must be commenced within two years: . . . (5) An action upon a statute for a civil penalty or forfeiture where the action is given to a govern-

ment unit." Although it would appear that this limitation period governing "forfeiture" actions "given to a government unit" applies here, we do not believe that Section 5524(5) precludes the Commonwealth from proceeding in this matter.

Initially, we note that the phrase "where the action is given to a government unit" within Section 5524(5) was deleted by amendment effective February 18, 1983, well before the seizure of the disputed property.

Further, we acknowledge the time-consuming and comprehensive efforts necessary for the successful investigation and prosecution of corrupt organizations and racketeering activities. In apparent recognition of the procedural and practical difficulties, the General Assembly enacted a five-year statute of limitations applicable to *criminal* prosecutions under the Corrupt Organizations Act. Section 5552(b)(1) of the Judicial Code. To impose a contracted two-year period upon a divestment proceeding brought pursuant to that same statute based on the underlying criminal activity is an unreasonable result which we do not believe was intended by the General Assembly. *See Cooley v. East Norriton Township,* 78 Pa. Commonwealth Ct. 11, 466 A.2d 765 (1983); Section 1922(1) of the Statutory Construction Act. Further, the General Assembly is presumed to favor the public interest as against any private interest. *Chesler v. Government Employees Insurance Co.,* 302 Pa. Superior Ct. 356, 448 A.2d 1080 (1982), *rev'd on other grounds,* 503 Pa. 292, 469 A.2d 560 (1983), *amended,* 504 Pa. 426, 475 A.2d 102 (1984). Section 911(d) civil divestment proceedings are intended to prevent and restrain further violations of the law pending a criminal investigation. We decline to undermine that purpose.

Therefore, based on the lack of any express statutory time limitation on the instant divestment proceeding ·at

the time of the underlying property seizure, we hold that the doctrine of *nullum tempus* applies, thus permitting the Commonwealth to proceed before this Court.[7]

Accordingly, respondents' motion for judgment on the pleadings is denied.

## ORDER

Upon consideration of respondents' motion for judgment on the pleadings and the briefs filed by the parties pursuant thereto, said motion is denied.

This decision was reached prior to the resignation of Judge MACPHAIL.

---

[7] Ebersole contends in her brief that she has been denied her due process rights because the Commonwealth unjustifiably delayed in bringing suit from the time of the property seizure and has failed to prove the legality of the seizure. We note, however, that this allegation was not raised in her pleadings, nor is there any record evidence from which to determine the merits of the claims. Hence, we will not consider this issue.