[Cite as *State ex rel. Ohio Atty. Gen. v. Peterson*, 2021-Ohio-4124.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL., OHIO ATTORNEY : GENERAL, :

      Plaintiff-Appellant/ :
      Cross-Appellee, :

                               Nos. 110361 and 110386

      v. :

ROLANDO PETERSON, ET AL., :

      Defendants-Appellees/ :
      Cross-Appellants.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
               AND REMANDED
**RELEASED AND JOURNALIZED:** November 18, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-913864

---

### *Appearances:*

David Yost, Ohio Attorney General, and Todd R. Marti and Ashley A. Barbone, Assistant Attorneys General, *for appellant/cross-appellee.*

Taft Stettinius & Hollister LLP, James D. Abrams, and William A. Doyle, *for appellee/cross-appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Plaintiff-appellant/cross-appellee, the Ohio attorney general on behalf of the state, appeals from the trial court's order granting summary judgment in favor of defendant-appellee/cross-appellant, Phyllis Bixler. The state raises two assignments of error for our review:

> 1. The [t]rial [c]ourt erred in concluding that liability under R.C. 9.39 is a penalty within the meaning of R.C. 2305.11. * * *
>
> 2. The [t]rial [c]ourt erred in applying R.C. 2305.11, a generally worded statute of limitations, to the [s]tate in contravention of *State v. Sullivan*, 38 Ohio St.3d 137, 527 N.E.2d 798 (1988) and *State ex rel. Petro v. Pure Tech Sys.*, 8th Dist. Cuyahoga No. 101447, 2015-Ohio-1638. * * *

{¶ 2} Bixler also cross-appeals from the order, raising one cross-assignment of error for our review:

> 1. The trial court erred in declining to grant summary judgment to [Bixler] on the basis of [Bixler]'s laches.

{¶ 3} We find merit to the state's two assignments of error. Accordingly, we find that the trial court erred in granting Bixler's summary judgment motion, and we remand for further proceedings consistent with this opinion.

## I. Procedural History and Factual Background

{¶ 4} In April 2019, the state filed a complaint against Bixler and 14 other defendants who were involved in the operations of the Cleveland Academy of Scholarship, Technology, and Leadership Enterprise ("CASTLE"), a community school organized under R.C. Chapter 3314. The state alleged that a special state audit covering the period July 1, 2004, through June 30, 2010, found that many of

the defendants had used CASTLE's public funds for their own benefit. The state brought a claim to reduce the audit's findings to a judgment pursuant to R.C. 117.28, 117.30, and 117.36. The state also brought a claim for public official strict liability pursuant to R.C. 9.39.

{¶ 5} The state's only claim against Bixler was for public official strict liability under R.C. 9.39. The state alleged that Bixler was CASTLE's treasurer from February 2005, to March 2008, that she was involved with CASTLE's collection of federal grant funding, and that, upon information and belief, Bixler signed checks drawn on the accounts that received CASTLE's public funds. The state alleged that Bixler is therefore strictly liable for the funds that were misappropriated while she was CASTLE's treasurer, which totaled $757,213.31. However, in discovery responses after filing the complaint, the state corrected its facts and explained that Bixler was CASTLE's treasurer from July 2004, to June 2006, that the $757,213.31 demand "is not accurate," and that the "correct figure is $340,531.67, plus costs and interest[.]" Bixler filed an answer to the complaint, raising as affirmative defenses that the doctrine of laches and the statute of limitations barred the state's claim against her.

{¶ 6} In May 2020, Bixler filed a motion for summary judgment. She argued that (1) the one-year statute of limitations under R.C. 2305.11(A) for actions brought upon a penal statute barred the state's claim, (2) the doctrine of laches applied, and (3) liability under R.C. 9.39 would violate her due process rights

because she had no opportunity to participate in the special audit. The state filed an opposition.

{¶ 7} The special audit report, attached to the state's complaint and Bixler's summary judgment motion, states that CASTLE was a community school in Cleveland that was created in 2004. The report provides that in March 2010, CASTLE's legal counsel wrote a letter to the state auditor requesting that the auditor investigate certain transactions between CASTLE and companies allegedly owned by several CASTLE board members. The report continues that a special task force of the state auditor initiated an investigation into CASTLE's payments to certain vendors and any unusual activity in CASTLE's bank accounts for the period July 2004 through June 2010. The state auditor issued the special audit report almost three years later in April 2013. The report shows that the special task force found numerous payments without supporting documentation to vendors affiliated with CASTLE board members who had not disclosed their financial interests. It also found that many financial transactions were not recorded in CASTLE's ledgers, that CASTLE had not complied with record retention laws, and that CASTLE's board had failed to oversee CASTLE's expenditures. The special audit report included 18 "findings for recovery for public money illegally expended," pursuant to R.C. 117.28, against multiple individuals and entities involved in CASTLE's management for a total of $1,352,501.

{¶ 8} The state attached to its complaint a report from the Ohio State Board of Education recommending that one of the individuals named in the audit have her

substitute teaching license revoked.  The report summarized the special audit report and noted that the state charged many of the individuals identified in the report in a 32-count indictment that included theft, money laundering, and having an unlawful interest in a public contract.

{¶ 9}  Bixler attached to her summary judgment motion an affidavit by her son, who averred that the company Phyllis Bixler Treasurer Consultants was CASTLE's treasurer for the 2004-2005 and 2005-2006 academic terms.  He explained that Bixler was the company's licensed treasurer and he was its assistant treasurer.  He averred that the company maintained all required documents to support every transaction from a CASTLE account in accord with best accounting practices.  He stated that when the company's contract with CASTLE expired after the 2005-2006 school year, Bixler and her company "had no involvement with anything related to CASTLE" until the state brought this case.  He averred that Bixler was 86 years old at the time of filing the summary judgment motion and that she lived in a nursing home and suffered from "bouts of memory loss."  He explained that Bixler executed a limited power of attorney declaring him as her attorney-in-fact for purposes of this litigation.

{¶ 10} For the 2004-2005 academic year, a 2006 state auditor report attached to Bixler's summary judgment motion provides that the state auditor found "no instances of noncompliance."  For the 2005-2006 academic year, Bixler's son averred that he took copies of the financial records for the year to the state auditor's office, which verified that the records were proper and complete.  Another audit

report attached to Bixler's summary judgment motion shows that two years later, in 2008, an independent accounting firm audited CASTLE's financial records for the 2005-2006 academic year. The report states that the firm could not express an opinion on the financial statements for that year because it was unable to "obtain sufficient documentation[.]"

{¶ 11} Bixler's son also averred that nobody from the state auditor's office contacted Bixler or her company during the special audit investigation initiated in 2010, and they did not participate in the investigation. He further stated that neither Bixler nor her company was named in the special audit report or in any findings for recovery.

{¶ 12} After full briefing on Bixler's summary judgment motion, the trial court granted her motion with a detailed opinion. The trial court found that R.C. 9.39 is a penal statute subject to a one-year statute of limitations pursuant to R.C. 2305.11(A), and that the state's claim was therefore time barred. The trial court rejected Bixler's other arguments and included in its judgment entry the Civ.R. 54(B) certification that there is no just reason for delay.

{¶ 13} The state timely appealed from this judgment, and Bixler timely cross-appealed.

## II. Penalty

{¶ 14} In its first assignment of error, the state argues that its claim against Bixler is timely because R.C. 9.39 does not impose a penalty and therefore does not trigger R.C. 2305.11(A)'s one-year statute of limitations. The state presents four

reasons why R.C. 9.39 does not impose a penalty: (1) it imposes strict liability instead of punishment for wrongdoing; (2) its purpose is to compensate the public from the loss of its funds; (3) it is not a penal statute simply because it acts as a deterrent for wrongdoing; and (4) we should resolve any ambiguity by construing R.C. 9.39 in favor of protecting public funds.

{¶ 15} We review a trial court's judgment granting a motion for summary judgment de novo. *Citizens Bank, N.A. v. Richer*, 8th Dist. Cuyahoga No. 107744, 2019-Ohio-2740, ¶ 28. Thus, we independently "examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). We review the trial court's order without giving any deference to the trial court. *Citizens Bank* at ¶ 28. "On appeal, just as the trial court must do, we must consider all facts and inferences drawn in a light most favorable to the nonmoving party." *Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 50.

{¶ 16} Pursuant to Civ.R. 56(C), summary judgment is proper where (1) "there is no genuine issue as to any material fact," (2) "the moving party is entitled to judgment as a matter of law," and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Trial courts should award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving

party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶ 17} R.C. 9.39 provides that public officials are strictly liable for the loss of public money they receive or collect "under color of office":

> All public officials are liable for all public money received or collected by them or by their subordinates under color of office. All money received or collected by a public official under color of office and not otherwise paid out according to law shall be paid into the treasury of the public office with which he is connected to the credit of a trust fund and shall be retained there until claimed by its lawful owner. If not claimed within a period of five years, the money shall revert to the general fund of the public office.

Officers of community schools are public officials within the meaning of R.C. 9.39 and "may be held strictly liable to the state for the loss of public funds." *Cordray v. Internatl. Preparatory School*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, ¶ 1. Strict liability means "'liability without fault.'" *Sikora v. Wenzel*, 88 Ohio St.3d 493, 495, 727 N.E.2d 1277 (2000), quoting *Black's Law Dictionary* (7th Ed.1999).

{¶ 18} R.C. 9.39 does not itself include a statute of limitations. Bixler argues, and the trial court found, that the one-year limitations period in R.C. 2305.11(A) for penal statutes applies to actions brought under R.C. 9.39. R.C. 2305.11(A) provides in relevant part that "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued[.]" We must therefore determine whether R.C. 9.39 imposes a penalty.

**{¶ 19}** A court's main objective when interpreting a statute is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). We first look to the language of the statute itself to determine the intent of the General Assembly. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). We must not insert words that the legislature did not use, nor delete words that the legislature did use. *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419, 704 N.E.2d 1217 (1999).

**{¶ 20}** Bixler maintains that we must apply the following three-prong test to determine whether R.C. 9.39 imposes a penalty: "(1) whether the purpose of the statute is to redress individual wrongs or wrongs to the public, (2) whether recovery runs to the individual or to the public, and (3) whether the authorized recovery is wholly disproportionate (or unrelated) to the harm suffered." *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 288, 638 N.E.2d 991 (1994) (Resnick, J., concurring).

**{¶ 21}** However, courts use this test when applying federal law. *See Radatz v. Fannie Mae*, 145 Ohio St.3d 475, 2016-Ohio-1137, 50 N.E.3d 527, ¶ 23, 31 (characterizing the test as "[t]he federal test" when applying federal law). Although Justice Resnick's separate concurring opinion in *Cosgrove* was joined by a majority of the justices, the Ohio Supreme Court has not applied this test other than in *Cosgrove* and in a 1942 opinion. *Floyd v. DuBois Soap Co.*, 139 Ohio St. 520, 522-523, 41 N.E.2d 393 (1942), *rev'd on other grounds, Floyd v. Du Bois Soap Co.*, 317

U.S. 596, 63 S.Ct. 159, 87 L.Ed. 488 (1942) (citing *Huntington v. Attrill*, 146 U.S. 657, 666-669, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), for the principle that "[t]he test whether a law is penal is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual."). Since Justice Resnick's separate concurring opinion in *Cosgrove*, this court and the Ohio Supreme Court have analyzed whether a statute imposes a penalty for purposes of R.C. 2305.11(A) without mentioning the three factors from Justice Resnick's separate concurring opinion. *See N. Shore Auto Fin., Inc. v. Block*, 8th Dist. Cuyahoga No. 82226, 2003-Ohio-3964; *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275.

{¶ 22} Instead, the Ohio Supreme Court has more recently explained that to determine whether a statute imposes a penalty, we must look to the context of the statute and determine whether its "primary purpose" is to "penalize or to remedy and compensate." *Cleveland Mobile Radio Sales* at ¶ 16. "In making that determination, we must not focus solely on the statute's ultimate goals or effect. Instead, we look to the methods used by the General Assembly to accomplish the goals and overall purpose of the statutory scheme." *Id.*

{¶ 23} The Ohio Supreme Court has explained that R.C. 9.39 codified the "firmly entrenched" Ohio case law that public officials are strictly liable for the public funds they control. *Cordray*, 128 Ohio St.3d 50, 2010-Ohio-6136, at ¶ 12-17. The court explained that it is well settled that "'a public office is a public trust, and that public property and public money in the hands of or under the control of such

officer or officers constitute a trust fund, for which the official as trustee should be held responsible to the same degree as the trustee of a private trust fund.'" *Id.* at ¶ 12, quoting *Crane Twp. Ex rel. Stalter v. Secoy*, 103 Ohio St. 258, 259-260, 132 N.E. 851 (1921). Ohio law holds public officials accountable for the funds that they receive, and public officials are "'liable for the loss of public funds, even though illegal or otherwise blameworthy acts on their part were not the proximate cause of the loss of public funds.'" *Cordray* at ¶ 14, quoting *State v. Herbert*, 49 Ohio St.2d 88, 96, 358 N.E.2d 1090 (1976).

{¶ 24} The Ohio Supreme Court has recognized that strict liability in this context is harsh but necessary as a matter of public policy to require public officials "to account for and disburse according to law moneys that have come into [their] hands by virtue of" their office. *Seward v. Natl. Surety Co.*, 120 Ohio St. 47, 50, 165 N.E. 537 (1929). The court reasoned that "it would open the door very wide for the accomplishment of the grossest frauds if public officials were permitted to present as the defense, when called on to disburse the money according to law, that it had been (performed) or destroyed by some deputy, or other subordinate, connected with the public office." *Id.* at 50-51. The strict liability is meant "to prevent frauds against the public, to protect public funds, and to place final responsibility for public funds on the shoulders of the officials charged with the collection and care of such funds[.]" *State ex rel. Linndale v. Masten*, 18 Ohio St.3d 228, 229, 480 N.E.2d 777 (1985). Ohio courts have described this strict liability as treating public officials like

insurers of public funds. *See State v. Gaul*, 117 Ohio App.3d 839, 851, 691 N.E.2d 760 (8th Dist.1997).

{¶ 25} This history behind R.C. 9.39 shows that the primary purpose of the statute is to compensate rather than penalize. R.C. 9.39 requires public officials to compensate the public for funds lost on their watch, even if the officials committed no wrongdoing. Bixler herself states that R.C. 9.39 "is designed to redress the public for wrongs committed by public officers with respect to those funds." She maintains that the statute nonetheless imposes a penalty because it holds public officials liable even if they committed no misconduct. But the public policy behind this strict liability is meant to compensate the public for its lost funds. We cannot construe this liability as a penalty where there is no wrongdoing to penalize.

{¶ 26} Bixler maintains that the statute's purpose to redress public wrongs, as well as the statutory language that funds recovered are paid into the treasury of the public office, support a finding that R.C. 9.39 is penal based on the test from Justice Resnick's separate concurring opinion in *Cosgrove*: that the purpose is meant to redress wrongs to the public (as opposed to an individual), that recovery runs to the public (as opposed to an individual), and that the recovery is disproportionate to the harm. We agree with Bixler that the purpose of R.C. 9.39 is to redress wrongs to the public and that recovery of the public funds runs to a public treasury. However, as previously discussed, this is the federal test, and the Ohio Supreme Court has not recently applied it.

{¶ 27} Furthermore, even if this were the correct test under Ohio law, Bixler has not satisfied the final prong — that recovery is disproportionate to the harm. Bixler concedes that this consideration "tilts in the remedial (as opposed to penal) direction" because R.C. 9.39 requires public officials to pay only an amount representing the public funds that were unlawfully spent. Indeed, the Ohio Supreme Court has found that a statute imposed a penalty in part because it incorporated a treble-damages award rather than "simply compensate an injured party with an award for actual damages." *Cleveland Mobile Radio Sales*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275, at ¶ 18. Bixler nonetheless urges us to evaluate whether recovery is proportionate to the conduct of the public official and argues it would be unfair for this court to hold her liable for others' crimes. However, such an analysis would be contrary to the language of the statute and the policy behind holding public officials strictly liable for the loss of public funds.

{¶ 28} Although we agree with Bixler and the trial court that R.C. 9.39 serves as a deterrent to prevent fraud and encourage public officials to closely supervise their subordinates and accounting practices, this does not change our conclusion that the primary purpose of the statute is to compensate rather than penalize. In *Rice*, 84 Ohio St.3d at 420-421, 704 N.E.2d 1217, the Ohio Supreme Court explained that an antidiscrimination statute, R.C. 4112.99, was still a remedial statute, as opposed a penal statute, even though it "also possesses a deterrent component concerned with preventing socially noisome business practices." Bixler distinguishes *Rice* by pointing out that the court found that R.C. 4112.99 was

remedial in part because it provided a private right of action. But this distinction does not affect the court's finding that a statute can be remedial even if it also has a deterrent effect. The court explained that because many statutes serve both to remedy a harm and deter improper business practices, "what is important in classifying a statute as remedial or penal is its primary purpose." *Id.* at 421. Even though R.C. 9.39 serves to motivate public officials to carefully oversee the funds in their care, as previously discussed, we find that its primary purpose is remedial.

{¶ 29} Lastly, the state maintains that we should resolve any ambiguity by construing R.C. 9.39 in favor of protecting public funds, and Bixler contends this is irrelevant to the statute-of-limitations dispute. However, the state did not present this argument to the trial court, and we therefore do not address the parties' contentions on this point. *See Care Circle L.L.C. v. Ohio Dept. of Mental Health & Addiction Servs.*, 2020-Ohio-1382, 153 N.E.3d 789, ¶ 37 (8th Dist.) ("A basic tenant of appellate jurisdiction is that a party may not present an argument on appeal that was not raised below.").

{¶ 30} We find that R.C. 9.39 does not impose a penalty, and R.C. 2305.11(A)'s one-year statute of limitations does not apply to the state's R.C. 9.39 claim against Bixler. Accordingly, we sustain the state's first assignment of error.

### III. Generally Worded Statute of Limitations

{¶ 31} In its second assignment of error, the state argues that R.C. 2305.11(A)'s one-year statute of limitations does not bar its claim against Bixler

for the separate reason that R.C. 2305.11(A) is a generally worded statute of limitations that does not apply to the state. The state maintains that under *State v. Sullivan*, 38 Ohio St.3d 137, 527 N.E.2d 798 (1988), and *State ex rel. Petro v. Pure Tech Sys.*, 8th Dist. Cuyahoga No. 101447, 2015-Ohio-1638, generally worded statutes of limitations like R.C. 2305.11(A) do not apply to claims brought by the state.

{¶ 32} In *Sullivan*, the Ohio Supreme Court held that "the state of Ohio, absent express statutory provision to the contrary, is exempt from the operation of a generally worded statute of limitations." *Sullivan* at 140. The court explained that a policy supporting this "long-established" rule is to protect the public's rights from any negligence of public officers. *Id.* at 138. In *Petro*, the Eighth District relied on *Sullivan* to find that the one-year statute of limitations in R.C. 2305.11(A) and the six-year statute of limitations in R.C. 2305.07 are both generally worded and do not apply to the state. *Petro* at ¶ 33.

{¶ 33} Bixler argues that "it would defy logic" to hold that R.C. 2305.11(A)'s one-year statute of limitations does not apply against the state's claim. Bixler maintains that actions brought pursuant to R.C. 117.28 to reduce audit findings to judgment are subject to a statute of limitations. Bixler contends that it would be "absurd" to apply a time limitation to R.C. 117.28 claims (which are against public officials who are subject to findings for recovery for their wrongdoing) and not apply a time limitation on R.C. 9.39 claims against public officials based on strict liability.

{¶ 34} We disagree with Bixler's argument. R.C. 117.28 claims are subject to the six-year statute of limitations set forth in R.C. 2305.07. *State ex rel. Holcomb v. Walton*, 66 Ohio App.3d 751, 756, 586 N.E.2d 176 (12th Dist.1990). However, we found in *Petro* that the six-year statute of limitations in R.C. 2305.07 is generally worded and does not apply to the state. *Petro* at ¶ 33. This holding is consistent with the finding that the one-year statute of limitations in R.C. 2305.11(A) also does not apply to the state.

{¶ 35} Based on the authority of *Sullivan* and *Petro*, we find that R.C. 2305.11(A) is a generally worded statute of limitations and does not apply against claims brought by the state. Accordingly, we sustain the state's second assignment of error.

{¶ 36} We find that the one-year statute of limitations in R.C. 2305.11(A) does not apply against the state's R.C. 9.39 claim against Bixler because R.C. 9.39 does not impose a penalty and because R.C. 2305.11(A) does not apply to the state. We therefore find that the trial court erred in granting summary judgment to Bixler on the basis that the state's claim was time barred.

## IV. Laches

{¶ 37} In her sole cross-assignment of error, Bixler argues that the trial court erred when it found that she was not entitled to summary judgment based on the doctrine of laches. She maintains that the state unreasonably delayed in bringing this action against her. She contends that the state knew about the other defendants' alleged wrongdoing because there were earlier criminal cases and proceedings

before the Ohio State Board of Education.  She argues that the delay prejudiced her because documents she would have needed to support her defense are now unavailable.  She also maintains that due to her age and "bouts of memory loss," she can no longer testify regarding relevant details from 16 years ago (when she was in her 70s and serving as CASTLE's treasurer).

{¶ 38} "Because laches is a component of equity, we review claimed error in the application of the doctrine for an abuse of discretion."  *Sobin v. Lim*, 2012-Ohio-5544, 984 N.E.2d 335, ¶ 17 (8th Dist.).  An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable.  *Ruwe v. Bd. of Twp. Trustees*, 29 Ohio St.3d 59, 61, 505 N.E.2d 957 (1987).

{¶ 39} To succeed on the defense of laches, Bixler must establish the following elements: "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party."  *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).  "[T]he party relying on the defense of laches must demonstrate at least constructive knowledge of the injury on the part of the affected party as a starting point of the delay that it asserts."  *Portage Cty. Bd. of Commr. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 82.

{¶ 40} Furthermore, "laches is generally not available against government entities."  *Id.*  "The rationale behind this rule is one of public policy; the public should not suffer due to the inaction of public officials."  *Still v. Hayman*, 153 Ohio App.3d

487, 2003-Ohio-4113, 794 N.E.2d 751, ¶ 11 (7th Dist.). Courts will therefore apply the doctrine of laches against a government entity only when "public policy interests served by applying the doctrine" outweigh "general public policy interests against the application of the doctrine" and "when the elements of laches are met." *Id.*

{¶ 41} The trial court declined to grant Bixler summary judgment based on laches because laches is generally not a defense against the state. In her summary judgment motion and on appeal, Bixler recognized this general rule but argued that the Ohio Supreme Court has never absolutely barred the use of laches against the state, citing to *Still* and *Adams Cty. Child Support Enforcement Agency v. Osborne*, 4th Dist. Adams No. 95CA592, 1996 Ohio App. LEXIS 1955 (May 3, 1996). The trial court found the cases to be distinguishable because they involved parentage actions.

{¶ 42} In *Adams*, a county prosecutor filed an action against the defendant to establish a parent-child relationship between him and a child but put the case on inactive status before establishing that the defendant was the father. *Adams* at 3. Fourteen years later, the county child support enforcement agency filed a paternity complaint against the defendant, and after trial, the court found that the defendant was the father and ordered that he reimburse the agency $24,753 for child support payments. *Id.* at 4. On appeal, the Fourth District reversed, finding that the doctrine of laches barred the agency's paternity complaint. *Id.* at 9. The court found that, "[w]hile generally, laches is not applied against a government agency, the Ohio Supreme Court has never imposed an absolute bar to the availability of laches as a legal defense." *Id.* at 6. The court found that the 14-year delay was unreasonable

and materially prejudiced the defendant because the child had already reached the age of majority, and the defendant had no rights to visitation or to provide input into parenting. *Id.* at 8-9.

{¶ 43} In *Still*, the Seventh District cited to *Adams* but found that laches did not apply to the parentage action because the child had not yet reached the age of majority, and the defendant "could have the ability to become involved in" the child's life. *Still* at ¶ 13. The trial court found that Bixler's case was not similar enough to the parentage line of cases to "extend the exception to the general rule against applying laches" against the state, noting that Bixler brought more traditional arguments like the loss of evidence.

{¶ 44} On appeal, Bixler argues that there is no case holding that a laches defense is available against a government entity only in parentage actions. She maintains that public policy interests weigh in favor of allowing a laches defense in her case because the state unjustifiably delayed in bringing this case and is trying to "capitalize on the loss of evidence and witnesses" that the delay caused. We disagree. The parentage cases involve "the public policy interest of establishing a parent-child relationship when the child is still a minor at the time the father is put on notice that he may be the father[.]" *Still* at ¶ 12. Bixler's case invokes no public policy interests in her favor other than the loss of evidence caused by delay — an interest at the heart of every laches defense. We agree with the trial court that Bixler's case does not present an exception to the general rule that a laches defense cannot be asserted against the state.

{¶ 45} Lastly, Bixler argues that the failure to apply a laches defense to the state's claim would violate her due process rights because the state's delay in pursuing this action has prevented her from obtaining evidence to challenge the audit's finding. The state maintains that Bixler did not raise this argument in the trial court. But Bixler did argue in her summary judgment briefing that her due process rights were violated because the state's delay in bringing this claim caused "the disappearance of crucial evidence in support of her defense," especially that she now suffers from memory loss.

{¶ 46} However, courts treat arguments of due process violations based on delay under a laches analysis. *See Smith v. State Med. Bd. of State*, 10th Dist. Franklin No. 00AP-1301, 2001 Ohio App. LEXIS 3229, 14 (July 19, 2001) (explaining that "[t]o the extent appellant is arguing his due process rights were violated by an unreasonable delay in prosecution," he must establish the elements of laches). In *Gralewski v. Ohio Bur. of Workers' Comp.*, 167 Ohio App.3d 468, 2006-Ohio-1529, 855 N.E.2d 879, ¶ 36 (10th Dist.), the defendant argued that a government entity deprived him of due process by delaying in bringing a lawsuit, and the Tenth District applied a laches analysis. The Tenth District found that the laches defense did not apply because the defendant failed to establish prejudice and because a laches defense was inapplicable against the government entity. *Id.* at ¶ 44. Thus, Bixler's reframing of her laches argument as a due process violation does not change our analysis.

{¶ 47} We find that the trial court's conclusion that Bixler cannot assert a laches defense against the state in this case is not "unreasonable, arbitrary, or unconscionable." Accordingly, we find that the trial court did not abuse its discretion, and we overrule Bixler's sole cross-assignment of error.

{¶ 48} We affirm the trial court's judgment regarding laches. However, we find that the one-year statute of limitations in R.C. 2305.11(A) does not apply against the state's R.C. 9.39 claim and that the state's claim was timely. Accordingly, we find that Bixler is not entitled to judgment as a matter of law in her favor based on the statute of limitations in R.C. 2305.11(A) or the doctrine of laches. We therefore reverse the trial court's grant of summary judgment in favor of Bixler and remand for further proceedings consistent with this opinion.

It is ordered that appellant/cross-appellee recover from appellee/cross-appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, AMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
LISA B. FORBES, J., CONCUR