[Cite as *In re R.C.*, 2023-Ohio-4149.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                    |     |              |                      |
|--------------------|-----|--------------|----------------------|
| IN RE: R.C.        | :   | APPEAL NOS.  | C-220660             |
|                    |     |              | C-220661             |
|                    | :   |              | C-230030             |
|                    |     | TRIAL NOS.   | 18-1541Z             |
|                    | :   |              | 18-1547Z             |
|                    |     |              |                      |
|                    | :   |              |                      |
|                    |     |              |                      |
|                    | :   | *O P I N I O N.* |                  |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are:    Affirmed in C-220660 and C-220661;
                                Appeal Dismissed in C-230030

Date of Judgment Entry on Appeal: November 17, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Timothy Young*, Ohio Public Defender, *Charlyn Bohland*, Assistant State Public Defender, and *Eleni Christofides*, Assistant State Public Defender, for Appellant R.C.

**CROUSE, Presiding Judge.**

{¶1}    Appellant R.C. appeals from the juvenile court's judgment granting the state's motion to invoke the stayed adult portion of his Serious Youthful Offender ("SYO") sentence. While R.C. was on parole from the Department of Youth Services ("DYS"), he was indicted as an adult on a drug-trafficking offense. Six months later, he was indicted for having weapons while under disability ("WUD"). Following the WUD indictment, the state moved the court to invoke R.C.'s adult sentence under the SYO provision of his juvenile adjudication. The juvenile court granted the state's motion. For the following reasons, we affirm the judgment of the juvenile court.

## I. Procedural History

{¶2}    In the underlying juvenile cases, then-16-year-old R.C. admitted to conduct that, if committed by an adult, would constitute two first-degree-felony counts of aggravated robbery, each with firearm specifications. The charges arose from two, separate occasions where R.C. engaged in armed carjacking. As part of R.C.'s plea agreement, the state withdrew its motion for bindover to the adult court. Because R.C. was adjudicated delinquent for offenses of violence committed with a firearm, the juvenile court was required by R.C. 2152.11(D)(1) to impose an SYO sentence, consisting of a juvenile disposition and a stayed adult sentence. R.C. was sentenced to three years in DYS on the firearms specifications and one year in DYS on the aggravated robberies. In addition to the juvenile disposition, the court imposed a stayed adult sentence of nine years on the aggravated robberies and firearm specifications. The court also required R.C. to pay restitution.

{¶3}    This court previously affirmed the juvenile court's disposition in a direct appeal of the adjudication. *In re R.C.*, 1st Dist. Hamilton Nos. C-180327 and C-180328,

2019 Ohio App. LEXIS 2927 (July 10, 2019).

{¶4} After three years in DYS custody, R.C. was granted early release from DYS and placed under parole supervision in May 2021. In September 2021, R.C.'s parole officer filed a parole violation because R.C. was seen on social media brandishing a firearm. The juvenile court found that R.C. had violated his parole but elected to continue his parole.

{¶5} In March 2022, at age 20, R.C. was indicted for trafficking in a fentanyl-related compound and possession of a fentanyl-related compound, both second-degree felonies. No action was taken in the juvenile cases at that time. Then, in September 2022, R.C. was indicted for having weapons while under disability, a third-degree felony. The state responded by filing a motion to invoke the adult portion of R.C.'s SYO disposition in October 2022.

{¶6} At the end of October, the juvenile court held a hearing on the state's motion. Defense counsel informed the court that they were not ready to proceed because they had not yet received discovery. At the suggestion of defense counsel, the court scheduled another hearing three weeks later, in November 2022, which was only a few days before R.C.'s 21st birthday.

{¶7} The juvenile court held the hearing on the state's motion, as well as several collateral motions regarding admissibility of evidence, over the course of three days in November 2022. Following the hearing, the juvenile court granted the state's motion and invoked R.C.'s suspended nine-year sentence in the Ohio Department of Rehabilitation and Correction, with credit granted for time served in DYS custody.

{¶8} This appeal timely followed.

## II. Factual History

{¶9}    In March 2022, R.C. was a passenger in another individual's car. The car had been under surveillance by the police for suspected illegal activity. Based on a license-plate violation, police initiated a traffic stop. While stopped, R.C. admitted to the presence of drugs in the car. R.C. was removed from the car and handcuffed. A pat-down search led to the discovery of drugs on R.C.'s person. The drugs were eventually determined to be a fentanyl-related compound.

{¶10}  In September 2022, while R.C. was on pretrial release with electronic monitoring based on the March 2022 drug charges, police responded to a ShotSpotter alert of shots fired near R.C.'s home. One of the officers testified that there was a report that R.C. was seen fleeing from the area of the alert. Based on the alert, police and probation officers were sent to R.C.'s home to perform a home check. During the home check, the probation officer found a backpack containing two handguns in a closet off of the living room of R.C.'s home. R.C. was taken into custody. At some point after being transported to the police station, R.C. made statements suggesting that he had been in possession of the firearms. Specifically, R.C. stated that the firearms had been disassembled, with the slide removed from the frame. R.C. also denied that the firearms belonged to his mother, the only other resident of his home.

## III. Analysis

{¶11}  In the appeals numbered C-220660 and C-220661, R.C. raises three assignments of error arising out of the juvenile court's judgments granting the state's motion to invoke the adult portion of his SYO disposition. R.C. argues first that the court erred in denying his motion to exclude evidence based on the doctrine of laches; second, that his rights to due process and effective assistance of counsel were violated;

and third, that the court's decision was based on insufficient evidence and was against the manifest weight of the evidence. We address each assigned error in turn.

### A. *First Assignment of Error*

**{¶12}** R.C. argues that the juvenile court abused its discretion in denying his motion to exclude evidence of the March 2022 drug case based on the doctrine of laches. R.C. claims that the state could have brought its motion to invoke when R.C. was indicted on the drug charges, but instead waited to bring its motion until October 2022, only a month before he turned 21, to R.C.'s prejudice.

**{¶13}** Laches is an equitable doctrine, and an appellate court reviews claims regarding its application for an abuse of discretion. *State ex rel. Ohio Atty. Gen. v. Peterson*, 2021-Ohio-4124, 182 N.E.3d 41, ¶ 38 (8th Dist.). An abuse of discretion occurs when "the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*

**{¶14}** To successfully invoke the doctrine of laches, the aggrieved party "must establish the following elements: '(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.' " *Id.* at ¶ 39, quoting *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). "Prejudice is not inferred from a mere lapse of time." *Polo* at 145.

**{¶15}** However, "laches is generally not available against government entities." *Peterson* at ¶ 40, quoting *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 82. The Ohio Supreme Court has never either expressly approved or disapproved of the application of laches to juvenile proceedings. Rather, the courts generally exercise restraint in its application to

government entities.

> "The rationale behind this rule is one of public policy; the public should
> not suffer due to the inaction of public officials." *Still v. Hayman*, 153
> Ohio App.3d 487, 2003-Ohio-4113, 794 N.E.2d 751, ¶ 11 (7th Dist.).
> Courts will therefore apply the doctrine of laches against a government
> entity only when "public policy interests served by applying the
> doctrine" outweigh "general public policy interests against the
> application of the doctrine" and "when the elements of laches are met."
> *Id.*

*Peterson* at ¶ 40.

{¶16} Assuming, without deciding, that the doctrine of laches would apply in this case, R.C. fails on the first two elements. We are unconvinced that the state's delay in bringing its motion to invoke was unreasonable, and even if the delay had been unreasonable, the state's excuse for the delay is reasonable.

{¶17} R.C. argues that the state could have brought its motion to invoke when he was charged in the March drug case, instead of waiting until he was charged with WUD in October. R.C. seems to suggest that the state must bring a motion to invoke the adult portion of the SYO sentence at the earliest opportunity, or else forfeit the opportunity. We do not believe that such a rule would meet the intent of the legislature, nor would it be good public policy.

{¶18} First, the statute vests discretion in the prosecuting attorney whether to bring a motion to invoke when certain conditions are met. *Compare* R.C. 2152.14(A)(1) ("The director of youth services *may request* the prosecuting attorney * * * to file a motion") *and* 2152.14(B) ("the director of youth services, the juvenile court * * *, or

6

the probation department * * * *may request* the prosecuting attorney * * * to file a motion"; "The prosecuting attorney *may file* a motion to invoke * * * even if no request is made.") *with* R.C. 2152.14(C) ("If the prosecuting attorney *declines a request* to file a motion"). (Emphasis added.) Requiring the prosecuting attorney to bring a motion to invoke at the earliest opportunity, or else forfeit the option, would eviscerate the discretion granted expressly by the legislature.

{¶19} Second, we believe that such a requirement would run afoul of the unique purpose of the juvenile court system. The purposes of dispositions under the juvenile-delinquency chapter "are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). Encompassed within that purpose is a recognition that children deserve a measure of grace and leniency greater than what is available in the adult court system. Consequently, we do not see it as compatible with that purpose to deny the prosecuting attorney the ability to extend a measure of leniency when determining whether to invoke the adult portion of an SYO disposition.

{¶20} The state's justification for the delay in bringing its motion to invoke R.C.'s stayed adult sentence is that, although the drug crimes charged were higher in degree, the WUD is a more alarming offense given R.C.'s history. R.C.'s initial disposition was based on two cases of carjacking, facilitated by the use of a handgun. Following R.C.'s release from DYS custody, he was seen brandishing a gun on social media. And a year later, R.C. was seen running from a location where shots had been reported, and two pistols were found in his home. The drug charges were different from R.C.'s possession and use of firearms, and the state reasonably concluded that

the prosecution of those charges alone was sufficient to hold him accountable for that conduct. But the WUD charge represented a failure of rehabilitation as to his illegal possession and misuse of firearms. Under these circumstances, it was reasonable for the state to conclude that it was necessary to seek to invoke the stayed, adult portion of R.C.'s SYO disposition only after R.C. picked up a new firearm-related charge.

{¶21} Even if we were to hold that the doctrine of laches applies in this case, R.C.'s laches argument must fail because the state's delay in filing its motion to invoke R.C.'s adult sentence was reasonable under the circumstances and justified by a reasonable excuse. R.C.'s first assignment of error is overruled.

## B. Second Assignment of Error

### 1. Due Process

{¶22} In his second assignment of error, R.C. argues that his due-process rights were violated at the hearing in a variety of ways. Juvenile court decisions that implicate due-process rights raise constitutional questions, which we review de novo. *In re D.C.*, 2017-Ohio-114, 75 N.E.3d 1040, ¶ 14 (10th Dist.). Although "juveniles are not entitled to full constitutional protections during delinquency proceedings," they are still "entitled to proceedings that 'measure up to the essentials of due process and fair treatment.' " *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 14, quoting *Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

{¶23} In his brief, R.C. argues that there were five specific instances during the proceedings below that resulted in a violation of his due-process rights. However, R.C. does not provide a legal argument as to how those alleged violations violated his rights. Instead, he merely lists those alleged due-process violations with citations to the record, and claims that "the totality of those rulings, coupled with the

government's unreasonable and unexcused late filing of the motion to invoke, created an unfair proceeding."

**{¶24}** Ordinarily, the lack of legal argument proffered by R.C. would justify the court in disregarding the argument because an appellate court is "not obligated to search the record or formulate legal arguments on behalf of the parties." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19; App.R. 16(A)(7). However, in the interest of fairness and justice, we will address each issue, based on the arguments raised below in the juvenile court.

**{¶25}** R.C. first argues, "The juvenile court denied R.C.'s motion to exclude evidence where the government failed to share discovery until just three days before the invocation hearing."

**{¶26}** In his written motion to exclude, R.C. asked the court to exclude all evidence related to the March drug case from the invocation hearing based on the doctrine of laches. We have already addressed this argument above.

**{¶27}** At the hearing, R.C. argued to exclude evidence on the basis that the state had not replied to R.C.'s discovery request until three business days before the invocation hearing. The state informed the court that, while discovery had only been provided to R.C.'s juvenile-court counsel the week before the hearing, the discovery materials had been provided to his adult-court counsel the month before the hearing. At the hearing, R.C. was represented by both the juvenile-court and adult-court public defenders. When the court asked if defense counsel had any rebuttal to the state's assertion, defense counsel told the court, "No, Your Honor. That is the facts as it is."

**{¶28}** R.C. also argued that he had not yet received the body-worn camera ("BWC") video from the September WUD case, either through adult or juvenile

counsel. The state informed the court that the prosecuting attorney had not received the BWC either, and therefore the state would not be relying on it in the invocation hearing.

{¶29} The juvenile court found that R.C. had received the relevant discovery materials through adult counsel and proceeded with the hearing.

{¶30} SYO-invocation proceedings are a close analog to probation or parole revocation proceedings. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, at ¶ 17. Although such revocation proceedings are generally deemed informal and not subject to the full panoply of rules pertaining to criminal proceedings, a probationer or parolee enjoys a minimum standard of due-process protections, as does a juvenile subject to SYO invocation. *See State v. McCants*, 1st Dist. Hamilton No. C-120725, 2013-Ohio-2646, ¶ 14. "Such due process includes written notice of the claimed violation; notice of the evidence to be used as the basis for the revocation; the opportunity to be heard in person and to present evidence; the right to confront and cross-examine adverse witnesses; a 'neutral and detached' hearing body; and a written statement by the finder of fact as to the reasons for revocation." *Id.*, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

{¶31} Under the circumstances of this case, where R.C. was represented at the SYO-invocation hearing by both his juvenile-court and adult-court public defenders, we hold that the due-process requirement that he receive "notice of the evidence to be used as the basis" for his SYO invocation was met when it was made to his adult-court counsel and subsequently, if belatedly, provided to his juvenile-court counsel.

{¶32} R.C. next argues, "The juvenile court granted the government's motion to limit discovery without conducting an in-camera review and the government never

claimed any specific way in which the adult case would be harmed by the disclosure of information to defense counsel." This argument is based on the state's motion to limit discovery of a "form 527B ('Trial Preparation Report')."

**{¶33}** The week before the invocation hearing, the state filed a motion to limit discovery of the Trial Preparation Report on the basis that the document was privileged work product, produced in preparation for the grand jury and for trial, and was thus exempt from discovery disclosure. With minimal discussion, the court noted that it was familiar with the Trial Preparation Report, was aware of the nature of its contents, and granted the state's motion, over R.C.'s objection.

**{¶34}** R.C. argued that the motion was facially defective for failing to identify specifically why the document is privileged and should therefore be denied, and that even if it is not denied outright, the material must be reviewed in camera before the court allows the state to withhold it.

**{¶35}** The trial court's decision regarding a protective order is reviewed for an abuse of discretion. *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 29 (1st Dist.). It is an abuse of discretion to grant the state's motion to quash discovery without reviewing the documents in camera. *In re C.A.*, 8th Dist. Cuyahoga No. 102675, 2015-Ohio-4768, ¶ 85.

**{¶36}** Although the state agreed at the hearing to proffer the report so that it could be reviewed on appeal, the report does not appear in the record. Further, R.C. has taken no action to compel production of the report in support of his appeal.

**{¶37}** Without the report in the record, we cannot review whether R.C. was prejudiced by its nonproduction. "It is emphatically the duty of the appellant to ensure that the record on appeal is complete and that any material necessary to the appellant's

assignment of error is contained within it." *State v. Mincey*, 2023-Ohio-472, 208 N.E.3d 1043, ¶ 42 (1st Dist.), citing App.R. 9.

**{¶38}** R.C. next argues, "The juvenile court denied R.C.'s motion to suppress his statements because R.C. never properly waived his *Miranda* rights."

**{¶39}** In advance of the invocation hearing, R.C. filed a motion to suppress statements that he made to officers prior to being advised of his *Miranda* rights, both as to the drug-trafficking arrest and the WUD arrest. However, we hold that the exclusionary rule is not applicable to SYO-invocation proceedings.

**{¶40}** The Ohio Supreme Court has held that SYO-invocation proceedings are not like delinquency proceedings. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, at ¶ 16. Rather, they are most akin to "a criminal court's imposition of a suspended sentence." *Id.* "At an invocation hearing, the juvenile court may not increase the juvenile offender's sentence; it merely decides whether to invoke the adult portion of the juvenile's sentence that was suspended." *In re A.A.W.*, 8th Dist. Cuyahoga No. 101580, 2015-Ohio-1297, ¶ 12, citing *In re J.V.* at ¶ 8.

**{¶41}** Under Evid.R. 101(A), the scope of the Ohio Rules of Evidence is limited, and they do not apply to many types of proceedings. Although neither invocation proceedings nor hearings to impose a suspended sentence are explicitly listed, other Ohio courts have held that invocation proceedings are sufficiently similar to the enumerated types of proceedings to justify excluding them from the ambit of the Rules of Evidence. *Id.*

**{¶42}** Probation- and parole-revocation hearings are also useful analogs to SYO-invocation proceedings. The Ohio Supreme Court has described postrelease control of adult offenders as "a carrot-and-stick approach because the carrot of

rehabilitation without institutional confinement is offered as an inducement to good behavior, even as the trial court retains the stick of imposing institutional confinement." *In re J.V.* at ¶ 17. The court went on to state that it viewed the blended sentences of SYO dispositions "in much the same way." *Id.*

{¶43} The exclusionary rule does not generally apply to probation- and parole-revocation proceedings. *State v. Tranter*, 12th Dist. Clermont No. CA2000-05-035, 2001 Ohio App. LEXIS 1413, 7 (Mar. 26, 2001); *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 661 N.E.2d 728 (1996), paragraph two of the syllabus. As such, illegally-obtained evidence is admissible in such proceedings. The deterrent value of the exclusionary rule must be found, if at all, in the context of the associated criminal proceeding. *Wright* at 92.

{¶44} Because the exclusionary rule is not applicable to R.C.'s invocation hearing, the trial court did not err by denying his motion to suppress.

{¶45} R.C. next argues, "The juvenile court permitted the government to introduce DYS records without authentication from the record holders."

{¶46} During the hearing, R.C. objected to the introduction of exhibits containing records of his parole from DYS, including the conditions of his parole and his treatment plan. R.C. agreed to the admission of the first page, which is the magistrate's decision to accept and approve the parole orders as orders of the court. R.C. objected to the introduction of the following pages, which were the DYS documentation of his parole conditions.

{¶47} R.C. argued that the DYS documents would need to be authenticated by someone from DYS with knowledge of the matter that could properly show that they are business records of DYS. In response, the state argued that the court clerk had

certified the entire packet as court records.

**{¶48}** In our review of the record, we observe that the entire packet of documents appears in the case record with the magistrate's decision. Additionally, the magistrate's decision states specifically, "it is hereby ordered that the *attached rules of parole* are accepted and approved as *orders of the court*." (Emphasis added.) Thus, the entire packet of documents is incorporated into the court's order in this case. There is no justification for its exclusion from the court's consideration in R.C.'s invocation proceedings.

**{¶49}** R.C. finally argues, "The juvenile court permitted the government to elicit testimony about evidence not shared with defense counsel. This included: evidence collected by the electronic monitoring unit, the ShotSpotter alert and resulting notification, a lab testing report about the identity of the drugs, and a lab testing report about the operability of the weapon."

**{¶50}** This is, in effect, a restatement of R.C.'s first argument regarding the lack of discovery provided to him. As discussed above, the trial court ruled against R.C.'s motion on the basis that R.C. had been provided the relevant discovery materials through his adult-court counsel in the underlying cases, and defense counsel did not dispute the state's claim that it had done so.

### 2. Ineffective Assistance of Counsel

**{¶51}** The Ohio Supreme Court has held that juveniles enjoy the right to counsel in delinquency proceedings. *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 48, citing *In re Gault*, 387 U.S. 1, 31-57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). To prevail on a claim of ineffective assistance of counsel, an appellant must show (1) that the attorney's performance fell below an objective standard of reasonable

representation, and (2) that prejudice arose from counsel's performance. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶52}** R.C. argues that he was deprived of his right to the effective assistance of counsel on the basis that the state's failure to provide counsel with adequate, timely responses to discovery requests was tantamount to making counsel ineffective for failure to be adequately prepared for the hearing. Specifically, R.C. argues that he had no notice of the evidence about the ShotSpotter report of shots fired that led to the home visit by police and probation personnel and discussion of the lab report confirming that the drugs recovered from R.C. consisted of fentanyl. Consequently, R.C. argues that counsel could not appropriately prepare to cross-examine the state's witnesses on this evidence.

**{¶53}** Regarding the ShotSpotter report, we have already determined that R.C. received discovery of the evidence in the WUD case through adult-court counsel, who also appeared on R.C.'s behalf at the invocation hearing. R.C. does not claim that adult-court counsel did not receive discovery related to the ShotSpotter report, therefore we presume that R.C.'s objection is only that juvenile-court counsel did not receive the information. Under these circumstances, R.C. cannot claim prejudice from the state's failure to provide discovery to counsel when he was also represented at the SYO-invocation hearing by his adult-court counsel who did have the information.

**{¶54}** Even if R.C. could show that the state failed to provide information about the ShotSpotter report, he still could not demonstrate prejudice because the ShotSpotter report was not necessary to the court's invocation of his SYO sentence. The ShotSpotter report forms the background as to why police visited his home in

September 2022, but it does not speak to the elements of the WUD charge that, in part, justifies the invocation of R.C.'s SYO sentence. It is sufficient for the state to show merely that R.C. was in constructive possession of a firearm. *See State v. Finnell*, 1st Dist. Hamilton Nos. C-140547 and C-140548, 2015-Ohio-4842, ¶ 41 (holding that constructive possession is sufficient for the possession element of the WUD statute).

{¶55} Regarding the lab report about the drugs recovered from R.C. in March, R.C. did not object at the invocation hearing that he had not received the report in discovery. Rather, R.C. objected on the basis that the report is hearsay, arguing that the report must be presented by someone with knowledge of the testing that was done. To do otherwise, R.C. claims, violates his right to confront adverse witnesses under the Sixth and Fourteenth Amendments to the United States Constitution. Instead, the report was presented by the arresting officer who submitted the drugs for testing.

{¶56} As we discussed above, the Rules of Evidence do not apply to an SYO-invocation hearing. And as the Eighth District has held, neither does the full weight of the Sixth Amendment's confrontation-clause protections. *In re M.B.*, 8th Dist. Cuyahoga No. 106434, 2018-Ohio-4334, ¶ 31. The only restriction on evidence the juvenile court may consider at an invocation hearing is that it must be "material and relevant." *Id.* at ¶ 32, citing *In re A.A.W.*, 8th Dist. Cuyahoga No. 101580, 2015-Ohio-1297, at ¶ 13. Hearsay evidence is admissible, as long as it bears sufficient indicia of reliability and is relevant to the juvenile court's determination of the facts at issue. *Id.*

{¶57} Consequently, the juvenile court did not err by admitting the drug-testing report over R.C.'s objection.

{¶58} Because we have determined that R.C.'s due-process rights and right to

16

counsel were not violated, R.C's second assignment of error is overruled.

## C. Third Assignment of Error

{¶59} In his third assignment of error, R.C. challenges the sufficiency and weight of the evidence supporting the juvenile court's decision to invoke his SYO sentence.

{¶60} In a hearing to invoke the adult portion of an SYO disposition, the state must prove by clear and convincing evidence: (1) the juvenile is currently serving the juvenile portion of the SYO disposition; (2) the juvenile is at least 14 years old; (3) the juvenile has been admitted to a DYS facility or there are criminal charges pending against the juvenile; (4) the juvenile engaged in the conduct alleged; and (5) the juvenile's conduct demonstrates that the juvenile is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction. R.C. 2152.14(E)(1).

{¶61} With respect to the fourth element, that the juvenile engaged in the conduct alleged, the conduct must be either (1) an act that is a violation of the conditions of parole supervision and that could be charged as any felony or a first-degree misdemeanor of violence, if committed by an adult; or (2) that the juvenile has engaged in conduct that creates a substantial risk to the safety or security of the community or of the victim. R.C. 2152.14(B).

{¶62} Clear and convincing evidence is a "measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). It is more than a preponderance of the evidence, but less than beyond a reasonable doubt. *Id.* On appellate review, this court should "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy

17

the requisite degree of proof." *Id.*

{¶63} The state argued in its motion to invoke that R.C. engaged in, and was indicted for, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, and having weapons while under disability.

{¶64} R.C. stipulated to his age (20 years old) and to the existence of pending criminal charges. However, R.C. refused to stipulate to the fact that he was currently serving the juvenile portion of his SYO disposition. Nevertheless, the court records clearly reflect that he was still serving the juvenile portion of his SYO disposition, and he does not argue to the contrary on appeal.

{¶65} Rather, on appeal, R.C. argues that the state relied merely on the filing of charges against him, meeting a probable-cause standard, and did not show that he had engaged in the alleged conduct by a clear-and-convincing-evidence standard. In support of his argument, R.C. points out that his parole officer testified to his good behavior otherwise while on parole, and that the parole department had not filed any new parole violations against him based on the drug and WUD charges.

{¶66} Our review of the record shows that possession of illegal drugs and possession of a firearm constitute violations of R.C.'s rules of parole. And the indictments against R.C. both allege felony violations. Either charge, if shown by clear-and-convincing evidence, may satisfy the conduct element required to invoke R.C.'s SYO sentence.

{¶67} Based on the testimony of Sergeant Jerome Herring of the Cincinnati Police Department, the state established that R.C. possessed what appeared to be illegal drugs in March 2022. Herring also testified that lab testing confirmed that the drug was fentanyl.

{¶68} The state also established, via testimony from Tiffany Theetge, a probation officer in the Electronic Monitoring Unit Division, that two handguns were found in R.C.'s home, where he lives with his mother. The state also offered testimony from Cincinnati Police Officer Sarah Cronin that R.C. was aware of the handguns and their disassembled condition, and that R.C. denied that the guns belonged to his mother. These statements support the inference that R.C. possessed the firearms.

{¶69} Under these circumstances, the record reflects that the juvenile court had sufficient evidence to conclude, by clear and convincing evidence, that R.C. had engaged in the alleged conduct of drug possession and WUD.

{¶70} The state must also prove by clear and convincing evidence that R.C. "is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction." The state offered no particular evidence regarding likelihood of rehabilitation. However, the SYO-invocation hearing concluded three days before R.C. turned 21 years old. This fact was well-known to the court. With such little time remaining of juvenile jurisdiction, the court had sufficient evidence to conclude that R.C. was unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

{¶71} Accordingly, R.C.'s third assignment of error is overruled.

### IV. Conclusion

{¶72} In the appeal numbered C-230030, R.C. filed a notice of appeal from the juvenile court's denial of his motion to modify his sentence. However, R.C. has not assigned error in his brief to this judgment. Therefore, we dismiss the appeal numbered C-230030. *See* App.R. 16(A). We affirm the judgments of the juvenile court in the appeals numbered C-220660 and C-220661.

Judgment accordingly.

**WINKLER** and **BOCK, JJ.**, concur.

Please note:

> The court has recorded its entry on the date of the release of this opinion.