**BOEHM, KURTZ & LOWRY, Appellant,**

v.

**INTERSTATE INSURANCE SERVICES AGENCY, INC., Appellee, et al.**

[Cite as *Boehm, Kurtz & Lowry v. Interstate Ins. Servs. Agency, Inc.*, 179 Ohio App.3d 147, 2008-Ohio-5761.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080186.

Decided Nov. 7, 2008.

148 

Montgomery, Rennie & Jonson, George D. Jonson, and Matthew E. Stubbs, for appellant.

Rendigs, Fry, Kiely & Dennis, Joseph W. Gelwicks, Felix Gora, and William H. Fry, for appellee.

SUNDERMANN, Presiding Judge.

{¶ 1} Boehm, Kurtz & Lowry ("BKL") appeals the trial court's entry of summary judgment in favor of Interstate Insurance Services Agency, Inc. ("Interstate"). Because we conclude that the trial court erred when it granted summary judgment to Interstate, we reverse the judgment of the trial court and remand the case for further proceedings, including a determination of BKL's class-certification motion.

## I. Background

{¶ 2} Interstate is an insurance agency in Cincinnati. At some point in 1996, Interstate began to buy advertisements in Fax News. Fax News was a publication that was distributed by Cincinnati Fax Publishing, Inc.[1] ("Fax Publishing") and that generally contained jokes, news blurbs, a section entitled "This Date in History," and local business advertisements. Fax Publishing faxed the publication to a list of subscribers. According to Douglas Jones, who started Fax Publishing with a partner, the Fax News subscriber lists were generated from such things as business listings from the Cincinnati and Northern Kentucky Chambers of Commerce, entries at trade shows, and subscriber requests.

{¶ 3} BKL is a law firm in Cincinnati. Beginning in January 2004, John Lowry, a partner in the firm, began saving faxes that were received at the firm. In 2005, the firm filed a complaint against Interstate alleging that between April 14, 2004, and August 20, 2005, Interstate had transmitted unsolicited advertisements in ten Fax News faxes in violation of Section 227 et seq., Title 47, U.S.Code (the Telephone Consumer Protection Act or "TCPA"). It also sought

---

1. The business that published Fax News conducted business under different names, but Cincinnati Fax Publishing, Inc., was the name of the company when this lawsuit was filed.

class certification for all persons to whom similar advertisements had been transmitted.

{¶ 4} Interstate filed a cross-complaint against Fax Publishing. BKL amended its complaint to add Fax Publishing and its president, LaCedra Jones, as defendants. Eventually, both the cross-complaint and the complaint against Fax Publishing and Jones were dismissed.

{¶ 5} BKL filed a motion for class certification, which was opposed by Interstate. Interstate filed a motion for summary judgment, arguing that BKL's complaint was barred by the doctrine of laches. After hearing arguments on the motions, the trial court granted Interstate's motion for summary judgment. The trial court also concluded that, in light of its grant of summary judgment, BKL's motion for class certification was moot.

## II. The Doctrine of Laches Did Not Apply

{¶ 6} In its first assignment of error, BKL asserts that the trial court erred when it granted summary judgment to Interstate based on the doctrine of laches. We agree.

{¶ 7} The doctrine of laches is an equitable doctrine that provides an affirmative defense if the defendant has been materially prejudiced by the plaintiff's unreasonable delay in asserting its rights.[2] To successfully raise laches as a defense, a party must demonstrate the following: "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party."[3] We review a trial court's determination regarding the applicability of laches under an abuse-of-discretion standard.[4]

{¶ 8} The TCPA makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless * * * the unsolicited advertisement is from a sender with an established business relationship with the recipient."[5] The act provides for a private right of action based on a violation of the act.[6]

---

2. *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

3. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

4. *Wright v. Oliver* (Dec. 24, 1986), 1st Dist. No. C–850827, 1986 WL 14887.

5. Section 227(b)(1)(C), Title 47, U.S.Code.

6. Section 227(b)(3), Title 47, U.S.Code.

{¶ 9} Interstate argued in the trial court that BKL knew about the allegedly unsolicited advertisements long before 2004. Interstate pointed to Lowry's affidavit in which he stated that BKL had regularly received Fax News "likely since 1995." Interstate also claimed that BKL had no excuse for its delay in asserting its rights under the TCPA. Finally, Interstate argued that it had been prejudiced by BKL's delay. Because it is dispositive, we consider this issue first.

{¶ 10} Interstate contended that it was prejudiced by the delay, because witnesses and documents material to Interstate's defense had disappeared. The gist of Interstate's argument was that Fax Publishing had received permission to send the faxes to its subscribers. According to Interstate's theory, BKL likely agreed to receive Fax News at some point, but witnesses who could testify to BKL's permission could not be found. And documents that supported Interstate's assertions had been destroyed. But even if Interstate had been able to demonstrate that Fax Publishing had received BKL's permission to send Fax News to it, that permission would not have relieved Interstate of its liability under the TCPA.

{¶ 11} Interstate would have been liable under the TCPA if it had sent unsolicited advertisements to BKL. Under a regulation promulgated by the Federal Communications Commission, a "sender" is defined as a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."[7] Interstate was a sender under the act. The regulations also define "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."[8] Even if BKL had given permission to Fax Publishing to send Fax News to it, it did not give its express permission to send it advertisements of Interstate's services. That permission could have been received by Interstate alone. And Richard Niklas, a partner of Interstate, stated in his deposition that Interstate had never sought or received permission to send its advertisements by facsimile.

{¶ 12} Because its defense with respect to BKL's permission to send the advertisements could not have been proved by either the testimony of witnesses or documents regarding permission received by Fax Publishing, Interstate did not demonstrate that it was materially prejudiced by any delay on BKL's part. And we do not need to determine whether the other elements of laches were demonstrated. Accordingly, the trial court erred when it granted summary

---

7. Section 64.1200(f)(8), Title 47, C.F.R.

8. Section 64.1200(f)(13), Title 47, C.F.R.

judgment based on the doctrine of laches. The first assignment of error is well taken.

### III. BKL's Motion for Class Certification

{¶ 13} When it granted Interstate's motion for summary judgment, the trial court also concluded that BKL's motion for class certification was moot. BKL asserts in its second assignment that this was error. Because we conclude that the trial court should not have granted summary judgment, BKL's motion for class certification is no longer moot. We sustain BKL's second assignment of error.

{¶ 14} We therefore reverse the judgment of the trial court and remand this cause for further proceedings consistent with the law.

Judgment reversed
and cause remanded.

PAINTER and HENDON, JJ., concur.