[Cite as *Reid v. Reese*, 2023-Ohio-4815.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LATONA REID, | : | APPEAL NO. C-230020 |
| | | TRIAL NO. P01-679Z |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CALVIN REESE, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 29, 2023

*Patricia A. Baas*, for Plaintiff-Appellant,

*Calvin Reese*, pro se.

**ZAYAS, Judge.**

{¶1}  Plaintiff-appellant mother appeals the judgment of the Hamilton County Juvenile Court dismissing her motion for defendant-appellee father to be held in contempt of court for failure to comply with his child-support obligation.  In a single assignment of error, mother argues that the juvenile court erred when it found that the doctrine of laches was applicable to bar her claim.  For the reasons that follow, we sustain mother's sole assignment of error, reverse the judgment of the juvenile court, and remand the cause for further proceedings consistent with this opinion and the law.

## I. Factual and Procedural History

{¶2}  In March 2003, father was ordered by the juvenile court to pay $4,500 per month in child support, effective April 1, 2003.  The order was based on an agreement submitted by the parties, which was accepted and adopted by the juvenile court.  Father was additionally ordered to pay $500 a month into a separate custodial account at PNC Bank as set out in the agreement.  The monthly custodial account payments (the "account payments") were to be considered "a component" of father's child-support obligation, the payment of which was to remain subject to the continuing jurisdiction of the juvenile court, including modification.  The subject of this dispute is father's failure to make the requisite account payments.

{¶3}  Father filed a motion to modify all child-support obligations based on a change in circumstances in April 2015.  The motion asserted that he was previously employed as a major-league baseball player ("MLB player") but was involuntarily cut from the team and was unable to find similar employment.  The motion further asserted that—with a high school education—he was now unable to earn even close to what he was previously earning as an MLB baseball player and requested that the

2

modification be applied retroactively to his date of unemployment in 2008 and for the court to "equitably reduce or eliminate the current arrearage."

{¶4} In January 2016, the juvenile court accepted and adopted an agreed entry between the parties pertaining to father's motion to modify. Of relevance here, the agreement (1) reduced father's monthly child-support obligation to $245.10 per month, effective April 30, 2015, (2) reduced the "child support arrearages" to zero in exchange for a lump-sum payment to mother in the amount of $24,100—payment of which was to be made from the immediate sale of certain of father's real estate,—and (3) eliminated father's obligation to make the account payments and waived all arrearages pertaining to the account payments in exchange for mother having access to the account to utilize the funds for the child's benefit.

{¶5} Mother filed a motion for relief from the January 2016 order, alleging fraud and/or misrepresentation by father in August 2016. The motion claimed that mother learned after the agreement that the real estate subject to the agreement had little, if any, value as substantial federal income tax liens had been placed on the property. The affidavit attached to the motion claimed that mother agreed to reduce father's child-support arrearage to zero and reduce father's obligation to pay child support and contribute to the savings account in exchange for the lump-sum payment to mother. The affidavit further asserted that mother relied in good faith on father's representation that there was ample equity in the home to cover the agreed-upon payment when she entered into the agreement.

{¶6} On April 19, 2017, the juvenile court set aside the January 2016 agreement and accepted and adopted a new agreed entry submitted by the parties (the "first new agreement"). The new agreement provided that (1) all matters in the previous agreement were to be treated as if they never occurred, (2) father's monthly

3

child-support obligation would be $245.10 between April 30, 2015, and December 31, 2016, and $374.70, effective January 1, 2017, and (3) all child-support arrearages would be preserved. The agreement did not contain any specific provisions pertaining to the account payments. Father was also ordered to pay $50 per month on "the arrearage," effective the date of the entry.

{¶7} Mother filed a motion for contempt, to increase child support, and for a lump-sum payment on arrearages in March 2019. The motion sought a finding of contempt relating to health-insurance payments, to increase the amount of child support due to mother's belief that father's employment and income had changed, and a lump-sum payment of the arrearages from father's retirement benefits available to him by virtue of his prior employment as an MLB player.

{¶8} In August 2019, the juvenile court accepted and adopted another new agreement between the parties (the "second new agreement") after father's support obligation was terminated due to the child in question turning 18 and graduating from high school. The second new agreement provided that father had an outstanding balance of $41,157.49 and was to make payments in the amount of $470 per month toward the arrearage, plus an additional payment of $820 on or before August 19, 2019. The agreement again preserved all "child support arrearages."

{¶9} Mother filed a motion for contempt based on father's failure to pay the monthly account payments in May 2021. The motion asserted that father made the requisite account payments through October 2006, but did not make any additional payments beyond that. The motion additionally asserted that the obligation continued until the child turned 18 in November 2018, resulting in father owing around $72,000 to the account.

{¶10} Father moved to dismiss mother's motion, arguing, among other things, that the motion should be dismissed as the doctrine of laches was applicable to bar mother's claim.

{¶11} A hearing was held on the motion to dismiss on October 18, 2021. Mother testified that she did not have any records of any payments made to the PNC account because she could not get records more than seven years old from the bank, and she did not maintain her own copies. She agreed that father did make payments to the account "in the beginning" but said that father stopped making the payments in 2006. She denied knowing how father was making payments to the account and said that the payments came from his financial advisor at the time. When asked why she did nothing to enforce the account payments until 2016, she said that she was busy and would reach agreements with father between the two of them and try to talk with father and communicate about everything to avoid having to pay her attorney. When asked if she knew how much father paid into the account, she answered, "At least $30,000." She testified that the money was no longer in the PNC account as some money was withdrawn for use toward the child's needs and the remainder was moved to a Fidelity Investments account in 2012. Thus, she agreed that father would have been unable to make payments to the PNC account after December 31, 2012, as the account no longer existed.

{¶12} Father testified that 2006 was the last year that he was employed as an MLB player. He denied being employed in any capacity earning income since 2006 but agreed that he sometimes makes money doing "camps and appearances," and worked as a local truck driver for five months, ten years ago. He testified that the payments to the account were set up to be automatic. He denied purposely stopping payments to the account or knowing how, when, or why the payments were stopped.

He said that his financial advisor set up the direct payments. He denied ever making payments to the account by written check or going to a bank branch, or ever talking to his financial advisor about the payments.

{¶13} After submission of written closing arguments, the magistrate granted the motion to dismiss on November 16, 2021. The magistrate found that the doctrine of laches barred mother's claim pertaining to the account payments as she unreasonably delayed enforcement of the account-payment provision—waiting 15 years to seek collection—and such unreasonable delay resulted in material prejudice to father as father would have been unaware of his need to modify the obligation to an amount that he could afford after his career ended had mother sought enforcement sooner.

{¶14} Mother filed objections to the magistrate's decision. Mother challenged the magistrate's findings that (1) her delay in seeking enforcement of the $500 monthly payments was unreasonable, (2) father was materially prejudiced by the delay, (3) father stopped making the payments 15 years before any collection attempt was made, and (4) laches barred mother's claim for contempt for failure to pay the court-ordered support.

{¶15} After hearing oral argument on the objections, the juvenile court ultimately sustained mother's third objection—finding that mother did not wait 15 years to seek collection of the account payments—but overruled the remaining objections. The court found that the doctrine of laches was applicable to bar mother's claim as her failure to seek enforcement of the obligation prior to 2019 was unreasonable and unexcused—except for stating that she was busy and did not want to pay her attorney—and father was prejudiced by the delay as the court was unable to confirm when the account payments ceased—due to the unavailability of the PNC

6

records—and father became ineligible to request modification of the support order upon the child's emancipation, leaving him with "very few options to rectify this issue and no way to amend the existing order."

{¶16}   Mother now appeals, arguing in a single assignment of error that the juvenile court erred in finding that the doctrine of laches barred her claim only two years after father's support obligation ended.

## II. Law and Analysis

{¶17}   Laches is an equitable doctrine, and we review its application for an abuse of discretion. *E.g.*, *In re R.C.*, 1st Dist. Hamilton Nos C-220660, C-220661 and C-230030, 2023-Ohio-4149, ¶ 13, citing *State ex rel. Ohio Atty. Gen. v. Peterson*, 2021-Ohio-4124, 182 N.E.3d 41, ¶ 38 (8th Dist.); *Boehm v. Interstate Ins. Servs. Agency*, 179 Ohio App.3d 147, 2008-Ohio-5761, 900 N.E.2d 1075, ¶ 7 (1st Dist.); *In re Perme*, 11th Dist. Trumball No. 2005-T-0056, 2006-Ohio-2771, ¶ 19.  "An abuse of discretion occurs when 'the trial court's attitude is unreasonable, arbitrary, or unconscionable.' " *Id.*, quoting *Peterson* at ¶ 38.

{¶18}   "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984).  Delay in asserting a right does not itself constitute laches.  *Id.*  Rather, "it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting [the] claim." *Id.* at 35-36.  "Material prejudice is shown by proving either: (1) a loss of evidence helpful to the defendant's case; or (2) a change in the defendant's position that would not have occurred if the plaintiff did not delay in asserting his or her rights." *Perme* at ¶ 18, citing *Bassett v. Bassett*, 11th Dist. Trumbull No. 2001-T-0129, 2002-Ohio-6587, ¶ 10.

**{¶19}** To successfully invoke the doctrine of laches, the aggrieved party must establish the following elements: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for the delay; (3) knowledge—actual or constructive—of the injury or wrong; and (4) prejudice to the other party. *E.g.*, *In re R.C.* at ¶ 14, quoting *Peterson* at ¶ 39; *Toki v. Toki*, 5th Dist. Perry No. 19-CA-00009, 2020-Ohio-130, ¶ 13.

**{¶20}** Mother does not dispute having knowledge of father's failure to make the account payments. Rather, she argues that the juvenile court abused its discretion in finding that her delay in seeking enforcement was unreasonable and unexcused, and that father was materially prejudiced by the delay.

**{¶21}** *In Gerlach v. Gerlach*, 124 Ohio App.3d 246, 705 N.E.2d 1287 (10th Dist.1997), the parties were divorced in 1976 and father was ordered to pay child support directly to mother. *Id.* at 250. In 1994, more than 17 years after the original decree, mother filed a motion to reduce the child-support arrearages to a lump-sum judgment. *Id.* Mother conceded that father made several child-support payments during the relevant period but could not remember the amount of payments or their frequency. *Id.* at 253. Father testified that he had made some payments but was unable to produce any documentary evidence to support his claim as he could no longer obtain cancelled checks from his bank due to the bank's retention policy and his late father—who could have offered testimony on this issue—died shortly before the action was initiated. *Id.* The trial court found that father was prejudiced by the delay in seeking payment due to his inability to prove the amount of payments. *Id.* Although indicating that it was unpersuaded that a bank's retention policy necessarily prevented a defendant from establishing the number and amount of payments made,

the court of appeals nevertheless affirmed the judgment of the trial court, finding some evidence that father was prejudiced by the delay. *Id.*

{¶22} While the instant case is similar to *Gerlach* in that neither party could testify as to the exact amount of payments made, there is a notable difference here as father never testified that he was unable to prove the amount of payments made. Mother testified that she was unable to get records from the bank and did not maintain records of the payments herself. However, there was no similar testimony from father. Additionally, unlike *Gerlach*, there was no testimony or evidence put forth to foreclose other potential avenues of proving payment, such as records from father's financial advisor. In fact, father's testimony was that he never talked to his financial advisor about these payments. Therefore, father failed to demonstrate that he was materially prejudiced by the delay based on an inability to prove the amount of payments.

{¶23} The juvenile court additionally found that father was prejudiced due to his inability to request a modification of the existing obligation. However, financial prejudice or the inconvenience of having to meet an existing obligation is insufficient to show material prejudice. *E.g.*, *Toki*, 5th Dist. Perry No. 19-CA-00009, 2020-Ohio-130, at ¶ 14, citing *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959); *Myers v. Myers*, 147 Ohio App.3d 85, 90-91, 768 N.E.2d 1201 (3d Dist.2002). Therefore, based on the record before us, we hold that the juvenile court abused its discretion in finding that the doctrine of laches was applicable to bar mother's claim as father failed to prove material prejudice.

{¶24} Further, the juvenile court's finding of unreasonable delay is also arbitrary as it is not in accord with the procedural history of this case. The juvenile court found that mother waited until 2019 to seek enforcement of the account

payments. Yet, the procedural history shows that the account payments were litigated in 2016 when father filed a motion to modify his support obligations.

**{¶25}** Father argues that the juvenile court could have alternatively granted his motion to dismiss based on the doctrine of res judicata, on the basis of R.C. 3121.44, or on the basis that the court lacked jurisdiction over the motion as the child had reached the age of 18 prior to the filing of the motion. However, these arguments were expressly denied by the magistrate below and father failed to object to the magistrate's decision. *See* Juv.R. 40(D)(3)(b)(iv) (providing that, by failing to object to a magistrate's decision, a party waives all but plain error on appeal). Further, father did not file a cross-appeal pertaining to these issues. *See* App.R. 3(C) (requiring a cross-assignment of error where a party seeks to change the order on appeal or, in the event the order is reversed or modified, an interlocutory ruling merged into the order). Therefore, we are without authority to address these arguments.

**{¶26}** Father additionally argues that the juvenile court could have alternatively granted the motion to dismiss based on the doctrine of unclean hands. However, a review of record reveals that, while father asserted this argument below, neither the magistrate nor the juvenile court ever ruled on this issue. This court, as a reviewing court, will not address an alternative argument for the first time on appeal. *See, e.g., Breazeale v. Infrastructure & Dev. Eng., Inc.*, 2022-Ohio-4601, 203 N.E.3d 861, ¶ 15 (1st Dist.), citing *Yoskey v. Eric Petroleum*, 7th Dist. Columbiana No. 13CO42, 2014-Ohio-3790, ¶ 41 ("The trial court must at least consider the issue in the first instance before an appellate court considers alternative arguments."); *Montville Lakes Cluster Homeowners Assn. Phase One v. Montville Lakes Homeowners Assn., Inc.*, 9th Dist. Medina No. 16CA0082-M, 2017-Ohio-7920, ¶ 17, quoting *Allen v. Bennett*, 9th Dist. Summit Nos. 23570, 23573 and 23576, 2007-Ohio-5411, ¶ 21 (" 'If

this court were to reach issues that had not been addressed by the trial court in the first instance, it would be usurping the role of the trial court and exceeding its authority on appeal.' "); *Marra v. Nationwide Ins. Co.*, 7th Dist. Mahoning No. 05-MA-216, 2007-Ohio-356, ¶ 62 ("When a trial court does not consider one of the arguments raised in support of a motion, but grants the motion solely on the basis of the second argument, the first argument is not properly before the court of appeals."). Therefore, we decline to address this argument and instead instruct the juvenile court to consider this issue on remand.

### III. Conclusion

**{¶27}** For the foregoing reasons, we sustain mother's sole assignment of error, reverse the judgment of the juvenile court, and remand the cause for further proceedings consistent with this opinion and the law.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry this date.